1   PAUL J. COUCHOT – State Bar No. 131934
    pcouchot@winthropcouchot.com
2   GARRICK A. HOLLANDER -- State Bar No. 166316
    ghollander@winthropcouchot.com
3   PAYAM KHODADADI – State Bar No. 239906
    pkhodadadi@winthropcouchot.com
4   **WINTHROP COUCHOT**
    **PROFESSIONAL CORPORATION**
5   660 Newport Center Drive, Fourth Floor
    Newport Beach, CA 92660
6   Telephone: (949) 720-4100
    Facsimile: (949) 720-4111
7
8   [Proposed] General Insolvency Counsel for
    Debtors and Debtors-in-Possession
9

10              **UNITED STATES BANKRUPTCY COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12                  **SANTA ANA DIVISION**

13

14  | In re: | Case No. 8:11-bk-15058 SC |

15  ☐   COMPOSITE TECHNOLOGY

16  CORPORATION, a Nevada corporation,

17  ☐   CTC CABLE CORPORATION,
    a Nevada corporation,

18
19  ☐   STRIBOG INC.,
    a Nevada corporation,

20
21  ☐   CTC RENEWABLES
    CORPORATION, a Nevada corporation,

22  ☒   All Debtors.

23
24  Debtors and
    Debtors-in-Possession.

25
26
27
28

Case No. 8:11-bk-15058 SC

Jointly Administered with Case Nos.
8:11-bk-15059 SC and 8:11-bk-15065 SC
and 8:11-bk-15130-SC
Chapter 11 Proceedings

**DEBTORS' MOTION FOR ORDER
AUTHORIZING CTC TO ENTER INTO
INSURANCE PREMIUM FINANCE
AGREEMENT AND TO GRANT SECURITY
INTEREST; MEMORANDUM OF POINTS
AND AUTHORITIES AND DECLARATION
OF BENTON H. WILCOXON IN SUPPORT
THEREOF**

[11 U.S.C. § 364]

DATE:     June 30, 2011
TIME:     10:00 a.m.
PLACE:    Courtroom 5C
          411 West Fourth Street
          Santa Ana, CA 92701

1    Composite Technology Corporation, a Nevada corporation ("CTC"), CTC Cable

2    Corporation, a Nevada corporation ("Cable"), Stribog, Inc., a Nevada corporation ("Stribog") and

3    CTC Renewables Corporation, a Nevada corporation ("Renewables"), the jointly administered

4    debtors and debtors-in-possession in the above Chapter 11 proceedings (collectively, the

5    "Debtors"), hereby move (the "Motion") this Court to enter an order, pursuant to Section 364(c)(2)

6    of the Bankruptcy Code, authorizing CTC to enter into that certain Commercial Premium Finance

7    Agreement with and Disclosure Statement ("Finance Agreement") with First Insurance Funding

8    Corp. of California ("FIFC") to finance the premium of Debtors' (i) domestic general liability

9    insurance policy (the "Domestic GL Policy"), (ii) foreign general liability insurance policy (the

10   "Foreign GL Policy"), (iii) property insurance policy (the "Property Policy"), (iv) umbrella

11   insurance policy (the "Umbrella Policy") and (v) cargo insurance policy (the "Cargo Policy")

12   insuring the Debtors for loss, as more fully described in the Motion. The Domestic GL Policy, the

13   Foreign GL Policy, the Property Policy, the Umbrella Policy, and the Cargo Policy are collectively

14   referred to herein as the Insurance Policies, and will be issued in forms substantially similar to the

15   documents attached as Exhibits "1" through "5," respectively, to Declaration of Benton H.

16   Wilcoxon (the "Wilcoxon Declaration"). A true and correct copy of the Finance Agreement is

17   attached as Exhibit "6" to the Wilcoxon Declaration.

18       The Motion is based upon these moving papers, the Memorandum of Points and

19   Authorities and the Wilcoxon Declaration attached hereto, the pleadings and documents filed in

20   this case, and the arguments and representations of counsel presented at the time of the hearing

21   thereon, if any.

22       **IF YOU DO NOT OPPOSE THE MOTION, YOU NEED TAKE NO FURTHER**

23   **ACTION. HOWEVER, IF YOU OPPOSE THE MOTION, OPPOSITIONS MUST BE**

24   **FILED WITH THE COURT NO LATER THAN FOURTEEN (14) DAYS PRIOR TO THE**

25   **HEARING ON THE MOTION. YOU MUST FILE YOUR OPPOSITION WITH THE**

26   **CLERK OF THE UNITED STATES BANKRUPTCY COURT LOCATED AT 411 WEST**

27   **FOURTH STREET, SUITE 2030, SANTA ANA, CALIFORNIA 92701. YOU MUST ALSO**

28   **SERVE A COPY OF YOUR OPPOSITION TO THE MOTION UPON COUNSEL FOR**

1  **THE DEBTORS AT THE MAILING ADDRESSES INDICATED IN THE UPPER LEFT**

2  **CORNER OF THE FIRST PAGE OF THIS MOTION, AND UPON THE OFFICE OF THE**

3  **UNITED STATES TRUSTEE LOCATED AT 411 WEST FOURTH STREET, SUITE 9041,**

4  **SANTA ANA, CALIFORNIA 92707. ANY FAILURE TO TIMELY FILE AND SERVE AN**

5  **OPPOSITION MAY RESULT IN ANY SUCH OPPOSITION BEING WAIVED, AND THE**

6  **COURT MAY ENTER AN ORDER GRANTING THE MOTION WITHOUT FURTHER**

7  **NOTICE.**

8      **WHEREFORE,** the Debtors pray that this Court enter its order granting the following

9  relief:

10     1.      Authorizing CTC to enter into the Finance Agreement pursuant to Section 364(c)(2)

11  of the Bankruptcy Code;

12     2.      Granting to FIFC a security interest solely in the Insurance Policies, including all

13  return premiums, dividend payments, and loss payments which reduce unearned premiums, subject

14  to any mortgagee or loss payee interest;

15     3.      Providing that the liens, security interests and rights in unearned premiums granted

16  under the Finance Agreement are senior to other liens in the Debtors' cases and are senior to any

17  claims under 11 U.S.C. §§ 503, 506(b) or 507(b);

18     4.      Approving the terms of the Finance Agreement, including all rights and privileges

19  granted to FIFC therein; *provided, however,* that any representation by CTC included in the

20  Finance Agreement with respect to Debtors' insolvency is waived;

21     5.      Except as otherwise provided herein, authorizing FIFC to exercise all rights with

22  respect to the Finance Agreement without first securing an order of the Court;

23     6.      Authorizing and directing CTC to timely make all payments due under the Finance

24  Agreement and authorizing FIFC to receive and apply such payments to the indebtedness owed by

25  CTC to FIFC as provided in the Finance Agreement;

26     7.      Providing that FIFC, or any third party, including the insurance company providing

27  the coverage under the Insurance Policies, exercising such rights shall comply with the notice

28  provisions and other provisions of the Finance Agreement;

1      8.    Providing that if CTC does not make any of the payments due under the Finance

2    Agreement as they become due, and subject to the notice and cure rights of CTC set forth in this

3    paragraph, the automatic stay shall automatically lift to enable FIFC and/or third parties, including

4    the insurance company providing the coverage under the Insurance Policies, to take all steps

5    necessary and appropriate to cancel the respective Insurance Policy, collect the collateral set forth

6    herein and apply such collateral to the indebtedness owed to FIFC by CTC; provided that in

7    exercising such rights, FIFC and/or third parties shall comply with the notice and other relevant

8    provisions of the Finance Agreement; and further provided that prior to exercising such rights,

9    FIFC and/or third parties shall provide a notice of CTC's default to CTC, CTC's counsel, counsel

10   to the Committee of Unsecured Creditors for the estate of Cable, and counsel to Partners for

11   Growth II, L.P., and to allow CTC (or other interested party) to cure such default within ten (10)

12   days from the receipt of such notice by the above parties, and shall exercise such rights only if

13   CTC (or other interested party) does not cure such default or obtain further order of the Court

14   within such period; and

15       9.    Granting such other and further relief as this Court deems just and proper.

16   DATED: June 9, 2011                    **WINTHROP COUCHOT**
                                            **PROFESSIONAL CORPORATION**

17

18                                         By:___/s/ Payam Khodadadi_____

19                                              Paul J. Couchot
                                                Garrick A. Hollander
20                                              Payam Khodadadi
                                                [Proposed] General Insolvency Counsel
21                                              for Debtors and Debtors-in-Possession

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.
### STATEMENT OF FACTS

**A.    The Debtors.**

CTC is a publicly traded company with a market capitalization value in excess of $55 million based on a closing market price on April 6, 2011 of $0.19 per share and 288,519,660 shares outstanding.  CTC owns all of the common stock of CTC Cable, Stribog and Renewables.  All Debtors are located at a shared facility in Irvine, California

CTC has conducted operations in Irvine, California for nearly 10 years. The company, along with its subsidiary CTC Cable, currently employs nearly 100 employees, approximately 50% of whom are hourly manufacturing employees.

CTC Cable manufactures and markets innovative energy efficient and renewable energy products for the electrical utility industry.  Prior to September of 2009, the Company had two core business segments, transmission cable products and wind turbine products.

**1.    The Cable Products Business**. The cable segment of the Debtors' business sells a high efficiency, composite core electricity conductor known as the "ACCC® conductor." This cable is used in electrical transmission and distribution lines.

CTC Cable's ACCC® Conductor product is a widely used and cost effective solution to the overloaded and aging transmission grid in the United States and elsewhere in the world due to its properties. This product allows double the current capacity, and 30% lower power losses.  If ACCC® conductor were implemented just in California, the avoided cost for power generation has been estimated to be in excess of $450 million per year.

CTC Cable manufactures its products in Irvine, California.  From there they are exported to countries around the world.  This product began commercialization in 2005, and by the end of fiscal year 2008 (9/30/2008), it had achieved $32 million in sales, of which $25 million was sold to China.

The ACCC® Conductor product has been presented as one of the most innovative new transmission utility products to senior government officials including to the U.S. Secretary of

1   Commerce, the U.S. Secretary of Energy, and the US Trade Representatives to China, Korea, India

2   and Indonesia, all of which are markets where CTC Cable has been sold or produced.

3        For the fiscal year ending September 30, 2008, CTC Cable produced positive cash flow

4   and was profitable from an EBITDAS (Earnings before Interest, Taxes, Depreciation,

5   Amortization, and Stock Compensation charges) basis. For the fiscal years ending September 30

6   2009 and 2010, CTC Cable's revenues were significantly impacted by the global economic crisis.

7   However, for the quarter ended December 31, 2010, CTC Cable had its largest revenue quarter in

8   nearly two years, and which was nearly 50% of the entire years' revenue for the fiscal year ending

9   September 30, 2009. CTC Cable is expected to begin operating on a positive EBITDAS basis by

10   the end of this fiscal year ending September 30, 2011.

11        **2.**    **The Wind Products Business**. CTC's wind products segment, which was

12   owned by Stribog, was sold to Daewoo Shipbuilding and Marine Engineering (DSME) on

13   September 4, 2009. Since this segment was not profitable, this sale materially reduced the burden

14   on the Debtors collectively.

15        Pursuant to the terms of the Asset Purchase Agreement entered into with DSME, CTC

16   received approximately $32.3 million in cash from this sale. However, $17.2 million of this sum

17   was initially set aside in an escrow for the benefit of DSME, to cover potential reimbursements

18   relating to net asset value adjustments, breaches of representations and warranties, and intellectual

19   property claims (the "Escrow Account"). To date, approximately $7 million of reimbursements

20   were made to DSME and other agreed upon parties.

21        In November of 2010, all of Stribog's interest in the Escrow Account was assigned to CTC

22   in consideration for a reduction in the amount of an outstanding intercompany receivable owed by

23   Stribog to CTC in the due amount of $16.4 million.

24        As of March 31, 2011, the Debtors were only required to maintain $3.0 million in the

25   Escrow Account. These funds are scheduled for release in September 2012. Until this date, they

26   are required to be held in the Escrow Account to pay any potential remaining claims. The

27   remainder of the funds in the escrow, in the approximate amount of $7.0 million (the "Released

28   Funds"), were under CTC's control and could be disbursed at CTC's direction.

1    PFG, CTC's senior lender, alleged a default under the terms of its Loan Agreement in April

2    of 2010, purportedly accelerated the loan, and attempted to seize the Released Funds through a

3    prejudgment motion filed with the California Superior Court. A hearing on this motion was held

4    on April 8, 2011. This action forced the Debtors into Chapter 11, since the relief granted by the

5    State Court would have deprived the Debtors of the use the Released Funds. Without access to

6    these funds, CTC would have been forced to cease operations.

7    **B.    Insurance Premium Financing Agreements Previously Submitted to this Court.**

8    On May 17, 2011, the Debtors filed *Debtors' Motion for Order Authorizing CTC to Enter*

9    *Into Insurance Premium Finance Agreement and to Grant Security Interest in Unearned*

10   *Premiums* to finance the insurance premiums for the Debtors' directors' and officers' insurance

11   policies and to finance the insurance premiums for the Debtors' in-house / corporate counsel errors

12   and omissions insurance policy. On June 1, 2011, the Court entered an order granting that motion.

13   On May 31, 2011, the Debtors filed *Debtors' Motion for Order Authorizing CTC to Enter*

14   *Into Insurance Premium Finance Agreement and to Grant Security Interest in Unearned*

15   *Premiums* to finance the premiums of an insurance policy insuring the Debtors for manufacturers

16   professional liability. That motion is scheduled for hearing on June 23, 2011 at 10:00 a.m.

17   **C.    The Insurance Policies Sought to Be Financed by the Finance Agreement in**

18   **this Motion.**

19   Pursuant to this Motion, the Debtors seek to finance the insurance premiums for the

20   Domestic GL Policy, the Foreign GL Policy, the Property Policy, the Umbrella Policy and the

21   Cargo Policy.

22   **i.    The Insurance Policies.**

23   In the ordinary course of the Debtors' business, the Debtors must maintain the Insurance

24   Policies. A description of each Insurance Policy, its expected coverage limit, and its expected

25   deductible are set forth below:

26

27

28

| Policy | Coverage Description | Coverage Limit | Deductible Per Incident |
|--------|---------------------|----------------|------------------------|
| Domestic GL | Domestic: Bodily Injury and Property Damage Liability; Product Liability; Personal and Advertising Injury Liability; Hired/Non-Owned Auto Liability | General Aggregate Limit (Other than Products) - $2M; Products Aggregate Limit - $2M; Personal and Advertising Injury Limit - $1M; Each Occurrence Limit - $1M; Hired/Non-Owned Auto Liability - $1M each accident | $5,000 |
| Foreign GL | Foreign: Bodily Injury and Property Damage Liability; Product Liability; Personal and Advertising Injury Liability; Employee Benefits; Employers Liability; Accidental Death & Dismemberment; Kidnap & Extortion; Hired/Non-Owned Auto Liability | General Liability - $1M; Employee Benefits - $1M; Auto Liability - $1M; Employers Liability - $1M; Medical Assistance - $1M; Accidental Death & Dismemberment - $1.5M; Kidnap & Extortion - $1M | $0 |
| Property | Direct Physical Loss or Damage on Real Property, Personal Property, Stock, Supplies, Business Interruption | Contents Limit - $10.5M; Business Income - $20M; Extra Expense - $1M; Earthquake Sprinkler Leakage - $1M; Electronic Data Processing - $1M | $10,000 |
| Umbrella | Bodily Injury, Property Damage, Personal Injury, and Advertising Injury Liability [Underlying Policies of Workers Compensation / Automobile / Domestic and Foreign General Liability] | Bodily Injury, Property Damage, Personal Injury, and Advertising Injury Liability - $20M; General Aggregate Limit (Other Than Products) - $20M; Products Aggregate Limit - $20M | $10,000 |
| Cargo | Physical Loss or Damage to Goods and/or Merchandise in Transit | Per Vessel - $8M; On Deck - $3M; Inland Transit (USA) - $2.5M; Per Aircraft - $3M | $5,000 |

The Debtors have made renewal demands, and will make down payments, for the Insurance Policies in the ordinary course. Payment of the full premiums for the Insurance Policies, however, would negatively impact the Debtors' cash-flow. Accordingly, CTC (the named insured) intends to finance the premiums for the Insurance Policies through the Finance Agreement.

    ii.    **The Finance Agreement.**

The Debtors have been unable to locate any source of unsecured premium financing for the Insurance Policies. CTC, however, has been able to locate secured premium financing for the unpaid premiums for the Insurance Policies through FIFC.

The Insurance Policies will bear total premiums of $131,658.75, the payment of which would impair negatively the Debtors' cash flow, to the detriment of the Debtors' estates. The down payment for the financing is $35,880.64 and the balance of the payments will be paid in nine (9) monthly installments equal to approximately $11,022.46. The first installment is due on July 3, 2011. The annual percentage rate of interest charged is estimated to be 8.500% resulting in total finance charges of $3,424.03.

1     Pursuant to the Finance Agreement, (i) CTC is directed to timely make all payments due

2     under the Finance Agreement and FIFC is authorized to receive and apply such payments to the

3     indebtedness owed by CTC to FIFC; (ii) FIFC is granted a security interest in the Insurance

4     Policies, including all return premiums, dividend payments, and loss payments which reduce

5     unearned premiums, subject to any mortgagee or loss payee interest; and (iii) FIFC is appointed as

6     CTC's attorney-in-fact with the irrevocable power to cancel Insurance Policies and collect the

7     unearned premium in the event CTC is in default of its obligations under the Finance Agreement.

8     The Debtors believe that it would be in the best interests of the Debtors' estates and

9     creditors to allow CTC to enter into the Finance Agreement since the Debtors must maintain the

10    Insurance Policies, and the Finance Agreement will aid the Debtors' cash flow by financing the

11    insurance premiums.

12    **II.**

13    **CAUSE EXISTS TO AUTHORIZE THE DEBTORS**

14    **TO ENTER INTO THE FINANCE AGREEMENT**

15    Section 364(c) of the Bankruptcy Code provides, in pertinent part, as follows:

16         If the trustee is unable to obtain unsecured credit allowable under

17    section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the

18    incurring of debt --
        . . .

19         (2) secured by a lien on property of the estate that is not otherwise subject to a lien. . . .

20

21    As is set forth in the Wilcoxon Declaration attached hereto, payment of the full Insurance

22    Policies premium would negatively impact the Debtors' cash-flow. Therefore, the Debtors need to

23    finance the purchase of the Insurance Policies.

24    The Debtors realize that it makes prudent business sense to maintain insurance coverage

25    against possible loss. Further, without the existence of the Insurance Policies, the Debtors' estates

26    may be in non-compliance with the insurance requirements set forth by the Office of the United

27    States Trustee and therefore could be faced with a substantial risk of irreparable harm.

       The Debtors respectfully submit that it is appropriate under the circumstances of these

28    cases for the Court to approve the Finance Agreement. First, the Debtors believe that obtaining

1   insurance coverage is essential to the operation of the Debtors' business because the Insurance

2   Policies protect the Debtors' estates from certain potential liabilities described herein.  Second, the

3   Debtors believe that obtaining financing of the premiums are acts that are essential to the operation

4   of the Debtors' business because the payment in full of the insurance premiums would impair

5   negatively the Debtors' cash flow.  Third, if this Court approves the Finance Agreement, creditors

6   of the estates will suffer no prejudice because the terms of the Finance Agreement are

7   commercially reasonable and in the best interests of the estates.  Accordingly, the Debtors believe

8   that the foregoing are acts authorized by the provisions of the Bankruptcy Code, including

9   Sections 1107 and 1108.

## III.

## CONCLUSION

Based on the foregoing, the Debtors pray that the Court enter an order granting the relief
requested herein.

DATED:  June 9, 2011                    **WINTHROP COUCHOT**
                                        **PROFESSIONAL CORPORATION**


                                        By:___/s/ Payam Khodadadi_____
                                            Paul J. Couchot
                                            Garrick A. Hollander
                                            Payam Khodadadi
                                            [Proposed] General Insolvency Counsel
                                            for Debtors and Debtors-in-Possession

MAINDOCS-#162627-v1-CTC_Insurance_Premium_Financing_(Property_General Liability__Umbrella__Foreign_General_Liability_and_Cargo).DOC

## DECLARATION OF BENTON WILCOXON

I, Benton Wilcoxon, hereby declare and state as follows:

1.      I am over the age of eighteen years, and I am authorized to make this declaration on behalf Composite Technology Corporation, a Nevada corporation ("CTC"), CTC Cable Corporation, a Nevada corporation ("Cable"), Stribog, Inc., a Nevada corporation ("Stribog") and CTC Renewables Corporation, a Nevada corporation ("Renewables"), the jointly administered debtors and debtors-in-possession in the above Chapter 11 proceedings (collectively, the "Debtors").

2.      The facts stated herein are within my personal knowledge, except where otherwise indicated.

3.      I am the Chief Executive Officer of CTC. I have served in this position since November 3, 2001.  I also serve on CTC's board of directors.

**The Debtors**

4.      CTC is a publicly traded company with a market capitalization value in excess of $55 million based on a closing market price on April 6, 2011 of $0.19 per share and 288,519,660 shares outstanding.  CTC owns all of the common stock of CTC Cable, Stribog and Renewables. All Debtors are located at a shared facility in Irvine, California

5.      CTC has conducted operations in Irvine, California for nearly 10 years. The company, along with its subsidiary CTC Cable, currently employs nearly 100 employees, approximately 50% of whom are hourly manufacturing employees.

6.      CTC Cable manufactures and markets innovative energy efficient and renewable energy products for the electrical utility industry.  Prior to September of 2009, the Company had two core business segments, transmission cable products and wind turbine products.

7.      **The Cable Products Business**. The cable segment of the Debtors' business sells a high efficiency, composite core electricity conductor known as the "ACCC® conductor." This cable is used in electrical transmission and distribution lines.

8.      CTC Cable's ACCC® Conductor product is a widely used and cost effective solution to the overloaded and aging transmission grid in the United States and elsewhere in the

1   world due to its properties. This product allows double the current capacity, and 30% lower power

2   losses. If ACCC® conductor were implemented just in California, the avoided cost for power

3   generation has been estimated to be in excess of $450 million per year.

4       9.    CTC Cable manufactures its products in Irvine, California. From there they are

5   exported to countries around the world. This product began commercialization in 2005, and by the

6   end of fiscal year 2008 (9/30/2008), it had achieved $32 million in sales, of which $25 million was

7   sold to China.

8       10.    The ACCC® Conductor product has been presented as one of the most innovative

9   new transmission utility products to senior government officials including to the U.S. Secretary of

10   Commerce, the U.S. Secretary of Energy, and the US Trade Representatives to China, Korea, India

11   and Indonesia, all of which are markets where CTC Cable has been sold or produced.

12       11.    For the fiscal year ending September 30, 2008, CTC Cable produced positive cash

13   flow and was profitable from an EBITDAS (Earnings before Interest, Taxes, Depreciation,

14   Amortization, and Stock Compensation charges) basis. For the fiscal years ending September 30

15   2009 and 2010, CTC Cable's revenues were significantly impacted by the global economic crisis.

16   However, for the quarter ended December 31, 2010, CTC Cable had its largest revenue quarter in

17   nearly two years, and which was nearly 50% of the entire years' revenue for the fiscal year ending

18   September 30, 2009. CTC Cable is expected to begin operating on a positive EBITDAS basis by

19   the end of this fiscal year ending September 30, 2011.

20       12.    **The Wind Products Business**. CTC's wind products segment, which was owned

21   by Stribog, was sold to Daewoo Shipbuilding and Marine Engineering (DSME) on September 4,

22   2009. Since this segment was not profitable, this sale materially reduced the burden on the

23   Debtors collectively.

24       13.    Pursuant to the terms of the Asset Purchase Agreement entered into with DSME,

25   CTC received approximately $32.3 million in cash from this sale. However, $17.2 million of this

26   sum was initially set aside in an escrow for the benefit of DSME, to cover potential

27   reimbursements relating to net asset value adjustments, breaches of representations and warranties,

28

1    and intellectual property claims (the "Escrow Account"). To date, approximately $7 million of

2    reimbursements were made to DSME and other agreed upon parties.

3        14.    In November of 2010, all of Stribog's interest in the Escrow Account was assigned

4    to CTC in consideration for a reduction in the amount of an outstanding intercompany receivable

5    owed by Stribog to CTC in the due amount of $16.4 million.

6        15.    As of March 31, 2011, the Debtors were only required to maintain $3.0 million in

7    the Escrow Account. These funds are scheduled for release in September 2012. Until this date,

8    they are required to be held in the Escrow Account to pay any potential remaining claims. The

9    remainder of the funds in the escrow, in the approximate amount of $7.0 million (the "Released

10   Funds"), were under CTC's control and could be disbursed at CTC's direction.

11       16.    Partners For Growth II, LP ("PFG"), CTC's senior lender, alleged a default under

12   the terms of its Loan Agreement in April of 2010, purportedly accelerated the loan, and attempted

13   to seize the Released Funds through a prejudgment motion filed with the California Superior

14   Court. A hearing on this motion was held on April 8, 2011. This action forced the Debtors into

15   Chapter 11, since the relief granted by the State Court would have deprived the Debtors of the use

16   the Released Funds. Without access to these funds, CTC would have been forced to cease

17   operations.

18   **Insurance Premium Financing Agreements Previously Submitted to this Court**.

19       17.    On May 17, 2011, the Debtors filed Debtors' Motion for Order Authorizing CTC to

20   Enter Into Insurance Premium Finance Agreement and to Grant Security Interest in Unearned

21   Premiums to finance the insurance premiums for the Debtors' directors' and officers' insurance

22   policies and to finance the insurance premiums for the Debtors' in-house / corporate counsel errors

23   and omissions insurance policy. On June 1, 2011, the Court entered an order granting that motion.

24       18.    On May 31, 2011, the Debtors filed Debtors' Motion for Order Authorizing CTC to

25   Enter Into Insurance Premium Finance Agreement and to Grant Security Interest in Unearned

26   Premiums to finance the premiums of an insurance policy insuring the Debtors for manufacturers

27   professional liability. That motion is scheduled for hearing on June 23, 2011 at 10:00 a.m.

28

**The Insurance Policies Sought to Be Financed by the Finance Agreement in the Motion.**

19.     Pursuant to the Motion, the Debtors seek to finance the insurance premiums for the Debtors' (i) domestic general liability insurance policy (the "Domestic GL Policy"), (ii) foreign general liability insurance policy (the "Foreign GL Policy"), (iii) property insurance policy (the "Property Policy"), (iv) umbrella insurance policy (the "Umbrella Policy") and (v) cargo insurance policy (the "Cargo Policy") insuring the Debtors for loss described below.  The Domestic GL Policy, the Foreign GL Policy, the Property Policy, the Umbrella Policy, and the Cargo Policy are collectively referred to herein as the Insurance Policies, and will be issued in forms substantially similar to the documents attached hereto as Exhibits "1" through "5," respectively.

**The Insurance Policies.**

20.     In the ordinary course of the Debtors' business, the Debtors must maintain the Insurance Policies.  A description of each Insurance Policy, its expected coverage limit, and its expected deductible are set forth below:

| Policy | Coverage Description | Coverage Limit | Deductible Per Incident |
|---|---|---|---|
| Domestic GL | Domestic: Bodily Injury and Property Damage Liability; Product Liability; Personal and Advertising Injury Liability; Hired/Non-Owned Auto Liability | General Aggregate Limit (Other than Products) - $2M, Products Aggregate Limit - $2M; Personal and Advertising Injury Limit - $1M; Each Occurrence Limit - $1M; Hired/Non-Owned Auto Liability - $1M each accident | $5,000 |
| Foreign GL | Foreign: Bodily Injury and Property Damage Liability; Product Liability; Personal and Advertising Injury Liability; Employee Benefits; Employers Liability; Accidental Death & Dismemberment; Kidnap & Extortion; Hired/Non-Owned Auto Liability | General Liability - $1M; Employee Benefits - $1M; Auto Liability   $1M; Employers Liability - $1M; Medical Assistance - $1M; Accidental Death & Dismemberment - $1.5M; Kidnap & Extortion - $1M | $0 |
| Property | Direct Physical Loss or Damage on Real Property, Personal Property, Stock, Supplies, Business Interruption | Contents Limit - $10.5M; Business Income - $20M; Extra Expense - $1M; Earthquake Sprinkler Leakage - $1M; Electronic Data Processing - $1M | $10,000 |
| Umbrella | Bodily Injury, Property Damage, Personal Injury, and Advertising Injury Liability [Underlying Policies of Workers Compensation / Automobile / Domestic and Foreign General Liability] | Bodily Injury, Property Damage, Personal Injury, and Advertising Injury Liability - $20M; General Aggregate Limit (Other Than Products) - $20M; Products Aggregate Limit - $20M | $10,000 |
| Cargo | Physical Loss or Damage to Goods and/or Merchandise in Transit | Per Vessel - $8M; On Deck - $3M; Inland Transit (USA) - $2.5M; Per Aircraft - $3M | $5,000 |

-14-

21.    The Debtors have made renewal demands, and will make down payments, for the Insurance Policies in the ordinary course.  Payment of the full premiums for the Insurance Policies, however, would negatively impact the Debtors' cash-flow.  Accordingly, CTC (the named insured) intends to finance the premiums for the Insurance Policies through that certain Commercial Premium Finance Agreement with and Disclosure Statement ("Finance Agreement") with First Insurance Funding Corp. of California ("FIFC").

**The Finance Agreement.**

22.    The Debtors have been unable to locate any source of unsecured premium financing for the Insurance Policies.  CTC, however, has been able to locate secured premium financing for the unpaid premiums for the Insurance Policies through FIFC.  A true and correct copy of the Finance Agreement is attached hereto as Exhibit "6."

23.    The Insurance Policies will bear total premiums of $131,658.75, the payment of which would impair negatively the Debtors' cash flow, to the detriment of the Debtors' estates.  The down payment for the financing is $35,880.64 and the balance of the payments will be paid in nine (9) monthly installments equal to approximately $11,022.46.  The first installment is due on July 3, 2011.  The annual percentage rate of interest charged is estimated to be 8.500% resulting in total finance charges of $3,424.03.

24.    Pursuant to the Finance Agreement, (i) CTC is directed to timely make all payments due under the Finance Agreement and FIFC is authorized to receive and apply such payments to the indebtedness owed by CTC to FIFC; (ii) FIFC is granted a security interest in the Insurance Policies, including all return premiums, dividend payments, and loss payments which reduce unearned premiums, subject to any mortgagee or loss payee interest; and (iii) FIFC is appointed as CTC's attorney-in-fact with the irrevocable power to cancel Insurance Policies and collect the unearned premium in the event CTC is in default of its obligations under the Finance Agreement.

**Cause Exists to Authorize the Debtors to Enter into the Finance Agreement**

25.     It would be in the best interests of the Debtors' estates and creditors to allow CTC to enter into the Finance Agreement since the Debtors must maintain the Insurance Policies, and the Finance Agreement will aid the Debtors' cash flow by financing the insurance premiums.

26.     It makes prudent business sense to maintain insurance coverage against possible loss. Further, without the existence of the Insurance Policies, the Debtors' estates may be in non-compliance with the insurance requirements set forth by the Office of the United States Trustee and therefore could be faced with a substantial risk of irreparable harm.

27.     It is appropriate under the circumstances of these cases for the Court to approve the Finance Agreement. First, obtaining insurance coverage is essential to the operation of the Debtors' business because the Insurance Policies protects the Debtors' estates from certain potential liabilities, described herein. Second, obtaining financing of the premiums are acts that are essential to the operation of the Debtors' business because the payment in full of the insurance premiums would impair negatively the Debtors' cash flow. Third, if this Court approves the Finance Agreement, creditors of the estates will suffer no prejudice because the terms of the Finance Agreement are commercially reasonable and in the best interests of the estates.

I declare that the foregoing is true and correct under the penalty of perjury.

Executed this 9th day of June 2011, in Orange County, California.

Benton Wilcoxon

# EXHIBIT "1"

| BRANCH 22 | PRODUCER CODE 0003845 | PRODUCER Swett & Crawford | | PREVIOUS POLICY NO. SGL 1001883 |
|---|---|---|---|---|
| | AUDIT Freq.    A | | | |

## DECLARATIONS    COMMON POLICY DECLARATIONS

POLICY NUMBER    SGL    1002344          Renewal of Policy No:    SGL    1001883

COVERAGE IS PROVIDED BY
**INTERSTATE FIRE AND CASUALTY COMPANY**
A STOCK COMPANY

| | |
|---|---|
| **Named Insured:** And Mailing Address: | Composite Technology Corp. (See UMB-8086)<br><br>2026 McGaw Ave.<br><br>Irvine                CA    92614 |
| Policy Period | From:  06/03/2010          To:    06/03/2011 |
| Agent or Broker Office Address:<br><br>Town and State: | Swett & Crawford<br>17901 Von Karman<br>Suite 400<br>Irvine                CA    92614 |

In return for the payment of premium and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | | PREMIUM |
|---|---|---|
| Commercial General Liability | Coverage Part | $        42,768.00 |
| Hired Auto and Non-Owned Auto Liability | Coverage Part | $          Included |
| | Coverage Part | $ |
| | Coverage Part | $ |
| Terrorism Risk Insurance Act - Certified Acts Coverage - Not Covered | | $                    .00 |
| | TOTAL PREMIUM | $        42,768.00 |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| Policy Total shown is payable at inception | POLICY TOTAL | $        42,768.00 |

**Form of Business:**

☒ Corporation        ☐ Individual        ☐ Partnership
☐ Joint Venture        ☐ Organization (Other than Partnership or Joint Venture)

Business  Description:    Manufacturer of electric cables, turbines & towers

Forms and Endorsements (other than applicable Forms and Endorsements shown elsewhere in the policy) (Show numbers)

See Forms Endorsement XSE-1001 (01/96)(Ed.01/98).

THESE POLICY DECLARATIONS AND THE COMMERCIAL GENERAL LIABILITY DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY ISSUED TO FORM A PART THEREOF COMPLETE THE ABOVE NUMBERED POLICY.
This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

COUNTERSIGNED AT: _____    BY: _____

                                                              AUTHORIZED REPRESENTATIVE
DATE:    06/02/2010        TXW / lmm

GLP-1001 (1/03) elec.aps

Exhibit 1, Page 17

# COMMERCIAL GENERAL LIABILITY COVERAGE PART
## DECLARATIONS

| | | |
|---|---|---|
| Policy No.    SGL  1002344 | Effective Date:  06/03/2010 | |
| | | 12:01 A.M., Standard Time |

**LIMITS OF INSURANCE**

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products—Completed Operations) | $ | 2,000,000 |
| Products—Completed Operations Aggregate Limit | $ | 2,000,000 |
| Personal and Advertising Injury Limit | $ | 1,000,000 |
| Each Occurrence Limit | $ | 1,000,000 |
| Fire Damage Limit | $ | 50,000  Any One Fire |
| Medical Expense Limit | $ | Excluded  Any One Person |

**RETROACTIVE DATE (CG 00 02 only)**

Coverage A of this insurance does not apply to "bodily injury" or "property damage" which occurs before the
Retroactive Date, if any, shown here:           None
                                                                        (Enter Date or "None" if no Retroactive Date applies)

**BUSINESS DESCRIPTION AND LOCATION OF PREMISES**

Form of Business:

☐ Individual  ☐ Joint Venture  ☐  Partnership  ☒ Organization (Other than Partnership or Joint Venture)

Business Description:  Manufacturer of electric cables, turbines & towers

Location of All Premises You Own, Rent or Occupy:  All Locations

**PREMIUM**

| Classification | Code No. | Premium Basis | Rate Pr/Co | All Other | Advance Pr/Co | Premium All Other |
|---|---|---|---|---|---|---|
| Electrical Cable Mfg. | 52467 | (s)32400000 | | 1.3200 | | 42,768 |

| | | |
|---|---|---|
| Total Advance Premium  $ | $ | 42,768 |

**FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsement shown elsewhere in the policy)**

Forms and Endorsement applying to this Coverage Part and made part of this policy at time of issue:
See Forms Endorsement XSE-1001 (01/96)(Ed.01/98).

*Information omitted if shown elsewhere in the policy.                        **Inclusion of date optional.

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

Includes copyrighted material of Insurance Services Office, Inc., with its permission
CL 150 (11-85)elec.apsCopyright,          Insurance Services Office, Inc., 1983, 1984                Page 1 of 1

POLICY NO:          SGL   1002344

# FORMS ENDORSEMENT

The following are the forms attached to and forming a part of the policy at inception:

```
GLP-1001          (01/03) General Liability Policy Declaration (Ifc)
CL150             (11/85) Commercial General Liability Coverage Part
                          Declaration
CG00010798                Commercial General Liability Coverage Form
05-GE 7007 CA     (05/08) California - Important Notice To
                          Policyholders
00-GL3843         (05/01) Hired Auto And Non Owned Auto Liability
                          Endorsement
01-GE 0005        (04/09) Service Of Suit
05-GL 3164        (08/08) Pex Piping Systems And Associated
                          Components Exclusion
CG00570999                Amendment Of Insuring Agreement-Known
                          Injury Or Damage
CG00621202                War Liability Exclusion
CG02121185                Cancellation By Us
CG04350202                Employee Benefits Liability Coverage
CG20110196                Additional Insured-Managers Or Lessors Of
                          Premises
CG20150704                Additional Insured-Vendors
CG20340704                Additional Insured - Lessor Of Leased
                          Equipment - Automatic Status When
                          Required In Lease Agreement With You
CG21351093                Exclusion-Coverage C-Medical Payments
CG21470798                Employment-Related Practices Exclusion
CG21490999                Total Pollution Exclusion Endorsement
CG21671204                Fungi Or Bacteria Exclusion
CG21960305                Silica Or Silica Related Dust Exclusion
CG22430798                Exclusion-Engineers, Architects Or
                          Surveyors Professional Liability
CG24041093                Waiver Of Transfer Of Rights Of Recovery
                          Against Others To Us
CG24260704                Amendment Of Insured Contract Definition
GLE-1023          (07/93) Deductible Liability Insurance
ICB-6003          (12/04) Amendment Of The Definition Of Employee -
                          Exclusion For Injury To Temporary
                          Workers
ICB-6005          (12/04) Intellectual Property Amendment
ICB-6007          (12/04) Cross Suits Exclusion
ICB-6024          (06/05) Lead Exclusion - Commercial General
                          Liability
ICB-6026          (06/05) Asbestos Exclusion - Commercial General
                          Liability
```

XSE-1001 (01/96) (Ed. 01/98) elec.aps

| ICB-8001 | (04/05) | Amendment Of Other Insurance Condition - Primary Insurance For Automatic Status Additional Insured |
| ICB-9001 | (04/05) | Minimum Earned Premium And Premium Audit Endorsement |
| IL00030498 | . | Calculation Of Premium |
| IL00171185 | | Common Policy Conditions |
| IL00210498 | | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| MST-8003 | (02/09) | Policy Jacket |
| UME-8007 | (01/96) | Aircraft Products Exclusion |
| UME-8086 | (04/90) | Named Insured Endorsement |
| 00-GL 3877 | (12/07) | Exclusion Of Certified Acts Of Terrorism And Exclusion Of Other Acts Of Terrorism Committed Outside The United States |
| PHN 3004 | (12/07) | Important Notice Regarding Terrorism Coverage |
| 05-GE 0002 | (09/09) | Reporting A Claim |
| MSN-8007 | (09/09) | Validation Form |

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II — Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V — Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) The "bodily injury" or "property damage" occurs during the policy period.

   c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected Or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. **Contractual Liability**

      "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) That the insured would have in the absence of the contract or agreement; or

      (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

         (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

### f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

Copyright, Insurance Services Office, Inc., 1997

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

   (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

   (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

   (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

   (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

   (a) Less than 26 feet long; and

   (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

Copyright, Insurance Services Office, Inc., 1997

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance ; and

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

a. "Personal and advertising injury":

   (1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

   (2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

   (3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

   (4) Arising out of a criminal act committed by or at the direction of any insured; ·

   (5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

   (6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

   (7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

   (8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

   (9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section; or

   (10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

b. Any loss, cost or expense arising out of any:

   (1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   (2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident: ·

   (1) On premises you own or rent;

   (2) On ways next to premises you own or rent; or

   (3) Because of your operations;

   provided that:

   (1) The accident takes place in the "coverage territory" and during the policy period;

   (2) The expenses are incurred and reported to us within one year of the date of the accident; and

   (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   (1) First aid administered at the time of an accident;

   (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

   (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

   We will not pay expenses for "bodily injury":

   a. To any insured.

   b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

   c. To a person injured on that part of premises you own or rent that the person normally occupies.

   d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

   e. To a person injured while taking part in athletics.

   f. Included within the "products-completed operations hazard".

   g. Excluded under Coverage A.

   h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f. The indemnitee:

      (1) Agrees in writing to:

         (a) Cooperate with us in the investigation, settlement or defense of the "suit";

         (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

         (c) Notify any other insurer whose coverage is available to the indemnitee; and

         (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   Copyright, Insurance Services Office, Inc., 1997   CG 00 01 07 98   □
Exhibit 1, Page 26

(2) Provides us with written authorization to:

    (a) Obtain records and other information related to the "suit"; and

    (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

    (1) "Bodily injury" or "personal and advertising injury":

        (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

        (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph (1)(a) above;

        (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

        (d) Arising out of his or her providing or failing to provide professional health care services.

    (2) "Property damage" to property:

        (a) Owned, occupied or used by,

        (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

    you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

    (1) With respect to liability arising out of the maintenance or use of that property; and

    (2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

### SECTION III -- LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage A; and

b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

Copyright, Insurance Services Office, Inc., 1997

CG 00 01 07 98
Exhibit 1, Page 28

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

Copyright, Insurance Services Office, Inc., 1997     **CG 00 01 07 98**     □

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

   (1) The injury or damage arises out of:

      (a) Goods or products made or sold by you in the territory described in a. above; or

      (b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

   (2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **(1)** Equipment designed primarily for:

        **(a)** Snow removal;

        **(b)** Road maintenance, but not construction or resurfacing; or

        **(c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        **(a)** When all of the work called for in your contract has been completed.

        **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Copyright, Insurance Services Office, Inc., 1997

b. Does not include "bodily injury" or "property damage" arising out of:

   (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

   (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Your product" means:

   a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

     (1) You;

     (2) Others trading under your name; or

     (3) A person or organization whose business or assets you have acquired; and

   b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

21. "Your work" means:

   a. Work or operations performed by you or on your behalf; and

   b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

   b. The providing of or failure to provide warnings or instructions.

## CALIFORNIA – IMPORTANT NOTICE TO POLICYHOLDERS

The following information is being supplied in compliance with Section 1764.1 of the California Insurance Code.

## NOTICE

1. THE INSURANCE POLICY THAT YOU HAVE PURCHASED IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.

2. THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT WHICH APPLIES TO CALIFORNIA LICENSED INSURERS.

3. THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.

4. CALIFORNIA MAINTAINS A LIST OF ELIGIBLE SURPLUS LINE INSURERS APPROVED BY THE INSURANCE COMMISSIONER. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST.

5. FOR ADDITIONAL INFORMATION ABOUT THE INSURER YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE, AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER: 1-800-927-4357.

6. IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.

05–GE 7007 CA (05/08)

# HIRED AUTO AND NON-OWNED AUTO
# LIABILITY ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below:

(The following needs to be completed only when this endorsement is issued subsequent to inception of the policy.)

| Named Insured | | |
|---|---|---|
| Endorsement Effective | Policy Number | Countersigned by |

(Authorized Representative)

Words and phrases that appear in "quotation marks" may have special meanings. See G. **DEFINITIONS** of this endorsement.

## SCHEDULE

Insurance is provided only with respect to those coverages for which a specific premium charge is shown:

| Coverage | Additional Premium |
|---|---|
| Hired Auto Liability | $ Included |
| Non-Owned Auto Liability | $ Included |

| Limits of Insurance | | |
|---|---|---|
| The most we will pay for any one "accident" or "loss": | $ 1,000,000 | Each "Accident" |
| **This Limit of Insurance is subject to the General Aggregate Limit shown in the Declarations** | | |

(If no entry appears above, the Each "Accident" Limit of Insurance would not be higher than the Each Occurrence Limit in the Declarations)

**A. HIRED AUTO LIABILITY**

The insurance provided under **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** (**SECTION I – COVERAGES**) applies to "bodily injury" or "property damage" to which this insurance applies caused by an "accident" and resulting from the maintenance or use of a "hired auto" by you or your "employees" in the course of your business.

**B. NON-OWNED AUTO LIABILITY**

The insurance provided under **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** (**SECTION I – COVERAGES**) applies to "bodily injury" or "property damage" to which this insurance applies caused by an "accident" and resulting from the use of a "non-owned auto" by any person other than you in the course of your business.

**C. EXCLUSIONS**

With respect to insurance provided by this endorsement only, paragraph 2. Exclusions of **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE (SECTION I – COVERAGES)** is modified as follows:

1. The following Exclusions do not apply:
   j. **Damage To Property**
   k. **Damage To Your Product**
   l. **Damage To Your Work**
   m. **Damage To Impaired Property Or Property Not Physically Injured**
   n. **Recall Of Products, Work Or Impaired Property**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc. 1992

OC-GL 3843 (5-01)                                                    Page 1 of 4

Exhibit 1, Page 35

2. Subparagraph (3) of Exclusion **g. Aircraft, Auto Or Watercraft** is amended to read:

    (3) Parking a "non-owned auto" or "hired auto" on, or on the ways next to the premises you own or rent.

3. Exclusion **b. Contractual Liability** is replaced in its entirety by the following:

    **b.  Contractual Liability**

    Liability assumed under any contract or agreement. but this exclusion does not apply to liability for damage:

      (1) Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

      (2) That the insured would have in the absence of the contract or agreement.

4. Exclusion **d. Workers' Compensation And Similar Laws** is replaced in its entirety by the following:

    **d.  Workers' Compensation And Similar Laws**

    Any obligation for which the insured or the insured's insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

5. Exclusion **e. Employer's Liability** is replaced in its entirety by the following:

    **e.  Employer's Liability**

    "Bodily injury" to:

      (1) An "employee" of the insured arising out of and in the course of:

        (a) Employment by the insured; or

        (b) Performing the duties related to the conduct of the insured's business; or

      (2) The spouse, child, parent, brother, or sister of the "employee" as a consequence of Paragraph (1) above.

      This exclusion applies:

        (a) Whether the insured may be liable as an employer or in any other capacity; and

        (b) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

    This exclusion also applies to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits and to employer's liability assumed by the insured under an "insured contract". For the purposes of this endorsement, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

6. The following exclusions are added:

    **p.  Care, Custody Or Control**

    "Property damage" to property owned or transported by the insured or in the insured's care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

    **q.  Handling Of Property**

    "Bodily injury" or "property damage" resulting from the handling of property:

      (1) Before it is moved from the place where it is accepted by the insured for movement into or onto the covered "non-owned auto" or "hired auto"; or

      (2) After it is moved from the covered "non-owned auto" or "hired auto" to the place where it is finally delivered by the insured.

    **r.  Movement Of Property By Mechanical Device**

    "Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to a "non-owned auto" or "hired auto".

    **s.  Operations**

    "Bodily injury" or "property damage" arising out of the operation of any equipment listed in paragraphs **12.f.(1), (2) and (3)** of the definition of "mobile equipment" in **SECTION V – DEFINITIONS.**

    **t.  No Fault, Uninsured Motorist Liability Or Underinsured Motorist Liability Laws**

    "Bodily injury" or "property damage" liability arising out of No Fault, Uninsured Motorist Liability or Underinsured Motorist Liability Laws.

    **u.  Racing**

    Any covered "non-owned auto" or "hired auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such a contest or activity. This insurance also does not apply while that covered "non-owned auto" or "hired auto" is being prepared for such contest or activity.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Copyright, Insurance Services Office, Inc. 1992

   **v.  Property Damage Excluded.**

    "Property damage" to any "non-owned auto" or "hired auto".

## D.  WHO IS AN INSURED

For the purposes of this endorsement only, **SECTION II - WHO IS AN INSURED** is replaced by the following:

**1.**  Each of the following is an insured under this endorsement to the extent set forth below:

   **a.**  You.

   **b.**  Any other person using a "hired auto" with your permission.

   **c.**  With respect to a "non-owned auto" any partner or executive officer of yours, but only while such "non-wned auto" is being used in your business.

   **d.**  Any other person or organization, but only with respect to their liability because of acts or omissions of an insured under paragraphs **a. b.** or **c.** above.

**2.**  None of the following is an insured:

   **a.**  Any person engaged in the business of his or her employer with respect to "bodily injury" to any co-employee of such person injured in the course of employment.

   **b.**  Any partner or "executive officer" with respect to any "auto" owned by such partner or "executive officer" or a member of his or her household.

   **c.**  Any person while employed in or otherwise engaged in performing duties related to the conduct of an "auto business", other than an "auto business" you operate.

   **d.**  Any person or organization with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## E.  LIMITS OF INSURANCE

For the purposes of this endorsement only, **SECTION III - LIMITS OF INSURANCE** is replaced by the following:

Regardless of the number of "non-owned autos", "hired autos", insureds, premiums paid, claims made, or vehicles involved in the "accident", the most we will pay for the total of all covered damages resulting from any one "accident" is the Each "Accident" Limit of Insurance shown in the Schedule of this endorsement. If no amount is entered for the Each "Accident" Limit of Insurance in the Schedule, then the Each "Accident" Limit of Insurance will not be higher than the Each Occurrence Limit in the Declarations. The Each "Accident" Limit of Insurance is subject to the General Aggregate Limit in the Declarations.

## F.  CONDITIONS

For the purposes of this endorsement only, paragraph **4. Other Insurance** of **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** is replaced by the following:

**4.  Other Insurance**

If other valid and collectible insurance is available to the insured for an "accident" or "loss" we cover under this endorsement, our obligations are limited as follows:

   **a.  Excess Insurance**

   This insurance shall apply as excess over any other valid and collectible insurance available to the insured. We will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend against the "suit". If the other insurer does not defend, we will undertake to do so, but we will be entitled to the insured's rights against any other such insurer. We will pay only our share of the amount of the "loss", if any, that exceeds the sum of:

    (1)  The total amount that all such other insurance would pay for the "loss" in the absence of this insurance; and

    (2)  The total of all deductible and self-insured amounts under all that other insurance. We will share the remaining "loss", if any, with any other insurance that was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

   **b.  Method of Sharing**

   If it is determined that this insurance is co-primary with any other insurance, the following method of sharing will apply:

    (1)  If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the "loss" remains, whichever comes first.

    (2)  If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Copyright, Insurance Services Office, Inc. 1992

**G. DEFINITIONS**

1. For the purposes of this endorsement only, **SECTION V - DEFINITIONS** is amended as follows:

   a. The following is added to definition 9. "Insured contract":

      g. That part of any contract or agreement entered into as part of your business, pertaining to the rental or lease by you or any of your "employees" of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented to or leased by you or any of your "employees".

   b. Definition 2. "Auto" is replaced in its entirety by the following:

      2. "Auto" means a land motor vehicle of the:
         (a) Private passenger vehicle type with a seating capacity of 15 passengers or less; or
         (b) Commercial or truck type (pick-up or van) with a Gross Vehicle Weight of 10,000 lbs. or less.

2. For the purposes of this endorsement only, the following terms have the following meanings:

   "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

   "Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".

   "Hired auto" means any "auto" you lease, hire, rent or borrow. This does not include any "auto" you lease, rent or borrow from any of your "employees", your partners, or your "executive officers" or members of their households.

   "Loss" means direct and accidental loss or damage.

   "Non-owned auto" means any "auto" you do not own, lease or borrow which is used in connection with your business. This includes autos owned by your "employees", your partners or your "executive officers" or members of their households, but only while used in connection with your business.

**All other terms and conditions of this policy remain unchanged.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc. 1992

# SERVICE OF SUIT

In the event of our failure to pay any amount claimed to be due under this policy, we agree to submit to the jurisdiction of any court of competent jurisdiction within the United States in which a suit for those amounts may be brought. Nothing in this condition constitutes or should be understood to constitute a waiver of our right to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.

Service of process in such suit may be made upon:

>Sally Narey
>Senior Vice President/Corporate Secretary
>Interstate Fire & Casualty Company
>777 San Marin Drive
>Novato, CA 94998

or her representative, and in any suit instituted against us with respect to this policy, we will abide by the final decision of such court or of any Appellate Court in the event of an appeal.

To the extent required by the express provision of any statute of any state, territory, or district of the United States, we hereby designate the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his successor or successors in office as our true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by you or on your behalf or any beneficiary hereunder arising out of this policy, and we hereby designate the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

All other terms and conditions of this policy remain unchanged.

01-GE 0005 (04/09)          © 2009, Fireman's Fund Insurance Company, Novato, CA. All rights reserved.

# PEX PIPING SYSTEMS AND ASSOCIATED COMPONENTS EXCLUSION

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

A. The following is added to **SECTION I –COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** and **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

1. The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "Pex piping system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of, mechanical or compression fittings or sealants in connection with such a system; or

2. "Your product" or "your work" with respect to any component, fixture or feature of any structure if a "Pex piping system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

B. The following definition is added to **SECTION V – DEFINITIONS:**

"Pex piping system" means a cross-linked polyethylene piping system used in plumbing and heating applications and all component parts therein used on any part of any structure as well as any exterior application.  All associated fittings and sealants used with this product are deemed to be part of the system.

## ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

05-GL 3164 (08/08)        © 2008, Fireman's Fund Insurance Company, Novato, CA.  All rights reserved.

COMMERCIAL GENERAL LIABILITY
CG 00 57 09 99

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURING AGREEMENT – KNOWN INJURY OR DAMAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE VERSION)

Paragraph 1. Insuring Agreement of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

    **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

  **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

  **e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

Copyright, Insurance Services Office, Inc., 1998

Exhibit 1, Page 41

COMMERCIAL GENERAL LIABILITY
CG 00 62 12 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **i.** under Paragraph **2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B.** The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**WAR**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**a.** War, including undeclared or civil war; or

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C.** Exclusion **h.** under Paragraph **2., Exclusions of Section I – Coverage C – Medical Payments** does not apply. Medical payments due to war are now subject to Exclusion **g.** of Paragraph **2., Exclusions of Section I – Coverage C – Medical Payments** since "bodily injury" arising out of war is now excluded under Coverage **A.**

    © ISO Properties, Inc., 2002

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

CG 02 12 11 85

# CANCELLATION BY US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

LIQUOR LIABILITY COVERAGE PART

POLLUTION LIABILITY COVERAGE PART

PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Number of Days**            30

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

Paragraph **2.** of CANCELLATION (Common Policy Conditions) is replaced by the following:

**2.** We may cancel this Coverage Part by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **b.** The number of days shown in the Schedule before the effective date of cancellation if we cancel for any other reason.

POLICY NUMBER: SGL 1002344

COMMERCIAL GENERAL LIABILITY<br>
CG 04 35 02 02

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYEE BENEFITS LIABILITY COVERAGE

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.**
**PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Limit Of Insurance | | Deductible | | Premium |
|---|---|---|---|---|---|
| Employee Benefits Programs | $ 1,000,000 | each employee | $ 1,000 | each employee | $ Included |
| | $ 1,000,000 | aggregate | | | |
| Retroactive Date: | 06/03/2009 | | | | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** The following is added to Section I – Coverages:

**COVERAGE – EMPLOYEE BENEFITS LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Paragraph **E.** (Section III – Limits Of Insurance); and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to damages only if:

**(1)** The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

**(2)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

**(3)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under Paragraph **G.** of this endorsement.

**c.** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

**(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

© ISO Properties, Inc., 2001

**(2)** When we make settlement in accordance with Paragraph 1.a. above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

**d.** All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

**2. Exclusions**

This insurance does not apply to:

**a. Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**b. Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**c. Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

**d. Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

**(1)** Failure of any investment to perform;

**(2)** Errors in providing information on past performance of investment vehicles; or

**(3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**f. Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g. ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**h. Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**i. Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**j. Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

**B.** For the purposes of the coverage provided by this endorsement:

**1.** All references to Supplementary Payments – Coverages A and B are replaced by Supplementary Payments – Coverages A, B and Employee Benefits Liability.

**2.** Paragraphs 1.b. and 2. of the Supplementary Payments provision do not apply.

**C.** For the purposes of the coverage provided by this endorsement, Paragraphs 2. and 4. of **Section II – Who Is An Insured** are replaced by the following:

**2.** Each of the following is also an insured:

**a.** Each of your "employees" who is or was authorized to administer your "employee benefit program".

**b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

© ISO Properties, Inc., 2001

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

   b. Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

D. For the purposes of the coverage provided by this endorsement, Paragraph 3. of **Section II – Who Is An Insured** does not apply.

E. For the purposes of the coverage provided by this endorsement, **Section III – Limits Of Insurance** is replaced by the following:

   1. Limits Of Insurance

      a. The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

         (1) Insureds;

         (2) "Claims" made or "suits" brought;

         (3) Persons or organizations making "claims" or bringing "suits";

         (4) Acts, errors or omissions; or

         (5) Benefits included in your "employee benefit program".

      b. The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

      c. Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

         (1) An act, error or omission; or

         (2) A series of related acts, errors or omissions

         negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

2. Deductible

   a. Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

   b. The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

   c. The terms of this insurance, including those with respect to:

      (1) Our right and duty to defend any "suits" seeking those damages; and

      (2) Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

      apply irrespective of the application of the deductible amount.

   d. We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

F. For the purposes of the coverage provided by this endorsement, Conditions 2. and 4. of **Section IV – Conditions** are replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

a. You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

(1) What the act, error or omission was and when it occurred; and

(2) The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

b. If a "claim" is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the "claim" or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

**b. Excess Insurance**

(1) This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

(a) No Retroactive Date is shown in the Schedule of this insurance; or

(b) The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

(2) When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

© ISO Properties, Inc., 2001
CG 04 35 02 02
Exhibit 1, Page 47

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance of all insurers.

**G.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

1. You will have the right to purchase an Extended Reporting Period, as described below, if:

   a. This endorsement is canceled or not renewed; or

   b. We renew or replace this endorsement with insurance that:

      (1) Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

      (2) Does not apply to an act, error or omission on a claims-made basis.

2. The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

3. An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

   You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

   We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

   a. The "employee benefit programs" insured;

   b. Previous types and amounts of insurance;

   c. Limits of insurance available under this endorsement for future payment of damages; and

   d. Other related factors.

   The additional premium will not exceed 100% of the annual premium for this endorsement.

   The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

4. If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

   The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

   Paragraph E.1.b. of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph E.1.c.

**H.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

1. "Administration" means:

   a. Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

   b. Handling records in connection with the "employee benefit program"; or

   c. Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

   However, "administration" does not include handling payroll deductions.

2. "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

3. "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

   a. Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

   b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

   c. Unemployment insurance, social security benefits, workers' compensation and disability benefits;

   d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

   e. Any other similar benefits designated in the Schedule or added thereto by endorsement.

I. For the purposes of the coverage provided by this endorsement, Definitions 5. and 18. in the **Definitions** Section are replaced by the following:

   5. "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

   18. "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

      a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

      b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

CG 20 11 01 96

## ADDITIONAL INSURED—MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective          12:01 A.M. standard time | Policy No. | |
|---|---|---|
| Named Insured | Countersigned by | |

(Authorized Representative)

### SCHEDULE

1. Designation of Premises (Part Leased to You):

2. Name of Person or Organization (Additional Insured):   Any person or organization when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.

3. Additional Premium:

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises.

2. Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

POLICY NUMBER: SGL 1002344

COMMERCIAL GENERAL LIABILITY
CG 20 15 07 04

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) (Vendor) | Your Products |
|---|---|
| Any person or organization when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1. The insurance afforded the vendor does not apply to:

   a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

   b. Any express warranty unauthorized by you;

   c. Any physical or chemical change in the product made intentionally by the vendor;

   d. Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

   e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

   f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

© ISO Properties, Inc., 2004

g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

h. "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

(1) The exceptions contained in Sub-paragraphs d. or f.; or

(2) Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

2. This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

© ISO Properties, Inc., 2004

COMMERCIAL GENERAL LIABILITY
CG 20 34 07 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – LESSOR OF LEASED EQUIPMENT – AUTOMATIC STATUS WHEN REQUIRED IN LEASE AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Who Is An Insured (Section II)** is amended to include as an additional insured any person or organization from whom you lease equipment when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person or organization.

A person's or organization's status as an additional insured under this endorsement ends when their contract or agreement with you for such leased equipment ends.

**B.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

CG 20 34 07 04                    © ISO Properties, Inc., 2004                    Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

CG 21 35 10 93

## EXCLUSION—COVERAGE C—MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective         12:01 A.M. standard time | Policy No. | |
|---|---|---|
| Named Insured | Countersigned by | |

(Authorized Representative)

### SCHEDULE

| Description and Location of Premises or Classification: |
|---|
| Any Location or Job Site |
| |
| |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule, coverage **C. MEDICAL PAYMENTS** (Section I) does not apply and none of the references to it in the Coverage Part apply.

The following is added to SUPPLEMENTARY PAYMENTS (Section I):

**8.** Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

  (1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

  (2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

  (1) Whether the insured may be liable as an employer or in any other capacity; and

  (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

  (1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

  (2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

  (1) Whether the insured may be liable as an employer or in any other capacity; and

  (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1997

COMMERCIAL GENERAL LIABILITY
CG 21 49 09 99

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

     Copyright, Insurance Services Office, Inc., 1998

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

a. "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

b. Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

2. Exclusions

This insurance does not apply to:

Silica Or Silica-Related Dust

a. "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

b. "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

c. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

2. Exclusions

This insurance does not apply to:

Silica Or Silica-Related Dust

a. "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

b. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

C. The following definitions are added to the Definitions Section:

1. "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

2. "Silica-related dust" means a mixture or combination of silica and other dust or particles.

    © ISO Properties, Inc., 2004

COMMERCIAL GENERAL LIABILITY
CG 22 43 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of Section I – **Coverage A** – **Bodily Injury And Property Damage Liability** and Paragraph 2., **Exclusions** of Section I – **Coverage B** – **Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

CG 24 04 10 93

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective                12:01 A.M. standard time | Policy No. | |
|---|---|---|
| Named Insured | Countersigned by | |

(Authorized Representative)

## SCHEDULE

**Name of Person or Organization:  Any person or organization when you and such person or organization have agreed in writing in a contract or agreement that you will waive any right of recovery against such person or organization.**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section IV—COMMERCIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard." This waiver applies only to the person or organization shown in the Schedule above.

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 24 26 07 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **9.** of the **Definitions** Section is replaced by the following:

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

 © ISO Properties, Inc., 2004

# DEDUCTIBLE LIABILITY INSURANCE

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### SCHEDULE OF DEDUCTIBLES

| Coverage | Amount and Basis of Deductible |
|----------|-------------------------------|
| Bodily Injury Liability | |
| Property Damage Liability | |
| Bodily Injury and Property Damage Liability Combined | 5,000        Each Occurrence |

*If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.*

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

I.  Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages, and the limits of insurance applicable to "each occurrence" for such coverages will be reduced by the amount of such deductible "Aggregate" limit for such coverages shall not be reduced by the application of such deductible amount.

II. The deductible amounts stated in the Schedule apply as follows:

    **A. PER CLAIM BASIS** - if the deductible is on a "per claim" basis, the deductible amount applies:

        1.  Under the Bodily Injury Liability or Property Damage Liability Coverage, respectively:

            a.  To all damages because of "bodily injury" sustained by one person, or

            b.  To all damages because of "property damage" sustained by one person or organization, as a result of any one "occurrence".

        2.  Under Bodily Injury Liability and Property Damage Liability Coverage combined to all damages because of "bodily injury" and "property damage" sustained by one person or organization as the result of any one "occurrence".

**B. PER OCCURRENCE BASIS** - if the deductible is on "per occurrence" basis, the deductible amount applies:

    1. Under the Bodily Injury Liability or Property Damage Liability Coverage, respectively:

        **a.** To all damages because of "bodily injury" as the result of any one "occurrence", or

        **b.** regardless of the number of persons or organizations who sustain damages because of that "occurrence".

    **2.** Under Bodily Injury Liability and Property Damage Liability Coverage combined to all damages because of "bodily injury" and "property damage" as the result of any one "Occurrence" regardless of the number of persons or organizations who sustain damages because of that "occurrence".

**C. LEGAL AND LOSS ADJUSTMENT EXPENSES**
The applicable deductible amount(s) stated in the Schedule of Deductibles above shall also apply to all legal and loss adjustment expenses.

**D. SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**
The applicable deductible amount(s) stated in the Schedule of Deductibles above shall also apply to all payments made under SUPPLEMENTARY PAYMENTS - COVERAGES A and B.

**III.** The terms of this insurance, including those with respect to:
    **A.** Our right and duty to defend any "suits" seeking those damages; and

    **B.** Your duties in the event of an "occurrence", claim, or suit
apply irrespective of the application of the deductible amount.

**IV.** We may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as have been paid by us.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

# AMENDMENT OF THE DEFINITION OF EMPLOYEE – EXCLUSION FOR INJURY TO TEMPORARY WORKERS

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS COVERAGE FORM**

In **SECTION V – DEFINITIONS**, the definition of "Employee" is deleted in its entirety and replaced with the following:

"Employee" includes a "leased worker" and a "temporary worker".

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

ICB-6003 12 04                                                    Page 1 of 1

# INTELLECTUAL PROPERTY AMENDMENT

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below:

(The following needs to be completed only when this endorsement is issued subsequent to inception of the policy.)

| Named Insured | | |
|---|---|---|
| Endorsement Effective | Policy Number | Countersigned by |

(Authorized Representative)

I.  Item 14. of SECTION V – DEFINITIONS. Is deleted in its entirety and replaced with the following:

14. "Personal and advertising injury" means injury including consequential "bodily injury" arising out of one or more of the following offenses:

    **a.** False arrest, detention of imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner landlord or lesser;

    **d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication of material that violates a person's right of privacy.

II.  Under SECTION I – COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions, a., the following exclusion is added:

    **a.** "Personal and advertising Injury":
    **(11)** Arising out of:

        **(a)** Infringment, disparagement,dilution,diminishment of or damage to:

            **i.** Copyright, slogan or title;

            **ii.** Patent;

            **iii.** Trademark, servicemark, collective mark, or certification mark, including without limitation any word, name, symbol, device or any combination thereof used to identify or distinguish the origin of a good, product or service;

            **iv.** Trade secret;

            **v.** Trade dress including without limitation, any shape, color, design or appearance used to distinguish the origin of a good, product or service;

            **vi.** Advertising ideas, concepts, campaigns, or style of doing business; or

            **vii.** Any other intellectual property rights recognized or implied by law.

        **(b)** .False designation of the origin of a good, product or service;

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

# CROSS SUITS EXCLUSION

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., **Exclusions** of **SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and Paragraph 2., **Exclusions** of **SECTION I – COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY:**

This insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising from claims or "suits" brought by:

a.    Any insured identified in the declarations or policy as a Named Insured against another Named Insured;

b.    Any insured identified in the declarations or policy as a Named Insured against a defendant who is an insured as defined in **SECTION II – WHO IS AN INSURED**, paragraph 1.; or

c.    Any insured defined in **SECTION II – WHO IS AN INSURED**, paragraph 1. against a Named Insured or any other insured as defined in **SECTION II – WHO IS AN INSURED**, paragraph 1.

## ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

ICB-6007 12 04                                                        Page 1 of 1

# LEAD EXCLUSION

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to paragraph 2. Exclusions of  SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY and paragraph 2. Exclusions of SECTION I – COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY:

This insurance does not apply to:

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of, or which would not have occurred in whole or in part but for:
   a. The actual, alleged or threatened ingestion, inhalation, consumption, absorption, discharge, dispersal, seepage, migration, release or escape of lead in any form, at any time, anywhere, in any way;
   b. The use of lead in any form, or products containing lead or the residue of lead, in construction or manufacturing of any goods, products or man-made structures, objects or features;
   c. The removal of lead in any form from any goods, products or man-made structures, objects or features; or
   d. The manufacture, transportation, storage, service, installation, use, sale, mining, distribution or disposal of lead in any form, or goods, products or man-made structures, objects or features containing lead or the residue of lead.
2. Any loss, cost, expense, fines or penalties related to or arising out of any of the above, including but not limited to:
   a. The investigation of any claim or defense of any "suit" for injury or damage;
   b. Any request or demand, including but not limited to an order or statutory or regulatory requirement issued or made pursuant to any environmental protection or environmental liability statutes or regulations, that any insured or others test for, monitor, clean up, remedy, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead in any form; or
   c. Any claim or "suit", including but not limited to those by or on behalf of a governmental authority, for damages because of testing for, monitoring, cleaning up, remedying, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead in any form.

### ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED

ICB-6024  06 05

# ASBESTOS EXCLUSION

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

> **COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The following exclusion is added to paragraph **2. Exclusions** of **SECTION I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and paragraph **2. Exclusions** of **SECTION I – COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY:**

This insurance does not apply to:

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of, or which would not have occurred in whole or in part but for:
    a. Inhaling, ingesting or prolonged physical exposure to asbestos in any form, or goods or products containing asbestos in any form, at any time, anywhere, in any way;
    b. The use of asbestos in any form in construction, or in the manufacturing of any goods, products or man-made structures, objects or features;
    c. The removal of asbestos in any form from any goods, products or man-made structures, objects or features; or
    d. The manufacture, transportation, storage, service, installation, use, sale, mining, distribution or disposal of asbestos in any form, or goods or products containing asbestos in any form.
2. Any loss, cost, expense, fines or penalties related to or arising out of any of the above, including but not limited to:
    a. The investigation of any claim or defense of any "suit" for injury or damage;
    b. Any request or demand, including but not limited to an order or statutory or regulatory requirement issued or made pursuant to any environmental protection or environmental liability statutes or regulations, that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of asbestos in any form; or
    c. Any claim or "suit", including but not limited to those by or on behalf of a governmental authority, for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of asbestos in any form.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED**

ICB-6026 06 05                                                                                          Page 1 of 1

# AMENDMENT OF OTHER INSURANCE CONDITION - PRIMARY INSURANCE FOR AUTOMATIC STATUS ADDITIONAL INSURED

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

If required under a written "insured contract" with you, paragraph **a. Primary Insurance** in **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance** is amended by adding the following paragraph:

> Not withstanding the foregoing, the insurance afforded to any person or organization who has been added to this policy by an Automatic Status Additional Insured Endorsement is primary and non-contributory insurance, but only as respects "bodily injury" or "property damage" liability arising out of "your work" performed after the effective date of this policy under a written contract between you and such person or organization that requires you to maintain primary and non-contributory insurance and to include such person or organization as an additional insured thereunder.

All other terms and conditions of this policy remain unchanged.

ICB-8001 04-05

Exhibit 1, Page 69

# MINIMUM EARNED PREMIUM AND PREMIUM AUDIT ENDORSEMENT

**This endorsement changes the policy. Please read it carefully.**

This endorsement modifies insurance provided under the following:
**COMMON POLICY CONDITIONS**
**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

A.  Item 5. of section **A. CANCELLATION** of the **Common Policy Conditions** is replaced by the following:

   5.  If this policy is cancelled, we will send the first Named Insured any premium refund due.
       a.  If we cancel, the refund will be pro rata.
       b.  Cancellation at the request of the first Named Insured:
           This policy is subject to a Minimum Earned Premium which is 25% of the premium for this policy as shown in
           the applicable Coverage Part(s) Declarations unless scheduled here otherwise: 25 %. This Minimum Earned
           Premium is the least amount of premium we shall retain as earned premium, regardless of the term. If the
           first Named Insured cancels, the refund will be determined as follows:
           (1)  If at the time of cancellation the earned premium is greater than the Minimum Earned Premium, the
                refund will be 90% of the pro rata return.
           (2)  If at the time of cancellation the earned premium is equal to or less than the Minimum Earned Premium,
                the refund will be the premium paid in excess of the Minimum Earned Premium.
       Cancellation for non-payment of premium will be considered cancellation at the request of the first Named
       Insured.

B.  If this policy is subject to premium audit, paragraph **b.** of item 5. **Premium Audit** in **SECTION IV-COMMERCIAL
   GENERAL LIABILITY CONDITIONS** of the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** is replaced
   by the following:

   b.  Premium shown in the **Commercial General Liability Coverage Part Supplemental Declarations** as Advance
       Premium is a deposit premium only which will be credited toward the amount of earned premium. The Advance
       Premium is the minimum premium for the policy period, is payable in full at the inception of coverage and is not
       refundable. At the close of each audit period we will compute the earned premium for that period. Audit
       premiums are due and payable on notice to the first Named Insured.

       This policy has a minimum amount of premium that applies to the term of insurance as listed on the policy.
       Unless otherwise stated, the minimum premium is equal to the advance and deposit premium as shown in the
       declarations, adjusted for subsequent endorsements. In the event that audit premiums are greater than the
       advance and deposit premium, the additional premium is due and payable upon notice to the insured. If audit
       premiums are less than the deposit, then the Company shall retain the advance and deposit premium.

       Minimum Annual Premium - is 100% of the advanced and deposit premium as stated in the policy declarations.

All other terms and conditions of this policy remain unchanged.

ICB-9001 04 05                                                                                        Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

IL 00 03 04 98

## CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
BUSINESSOWNERS POLICY
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILTY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY—NEW YORK

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

       Copyright, Insurance Services Office, Inc., 1982, 1983

INTERLINE
IL 00 21 04 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

Copyright, Insurance Services Office, Inc., 1997

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

        Copyright, Insurance Services Office, Inc., 1997        IL 00 21 04 98    □
                                                                Exhibit 1, Page 74

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AIRCRAFT PRODUCTS EXCLUSION

This policy does not apply:

I.   Under the Products-Completed Operations Hazard, as defined in the Primary Policy, no insurance is afforded with respect to any of the following:

    A. Aircraft (including missiles or spacecraft) and ground support or control equipment used therewith;

    B. Any article manufactured or furnished by the Insured for installation in aircraft or for use in connection with aircraft or as spare parts for aircraft;

    C. Ground handling tools and equipment relating to the above;

    D. Training aids, instructions, manuals, blueprints, engineering data, or engineering advice relating to the above; or

    E. Services and labor relating to the above;

    F. Any representation or warranty made with respect to the above.

II.  To any liability assumed by the Insured under any written or oral contract, agreement or warranty pertaining to such products as shown in Item 1 of this endorsement.

III. To any claims arising out of "grounding" liability.

**Additional Definition:**

"Grounding" as used in this endorsement shall mean:

The withdrawal, at or about the same time, in the interest of safety, of one or more aircraft from flight operations, or the imposition of speed, passenger or load limitations on such aircraft, because of a like condition, or suspicion thereof, in two or more aircraft, whether such aircrafts so withdrawn are owned or operated by the same or different persons, firms or corporations.  A grounding shall be deemed to commence on the date of such an accident or occurrence which discloses such condition, or suspicion, or on the date an aircraft is first withdrawn from service on account of such condition or suspicion, whichever first occurs.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

UME-8007 (1/96) elec.aps

# NAMED INSURED

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

The **NAMED INSURED** is completed to read as follows:

Composite Technology Corp.
CTC Cable Corporation
CTC Renewables Corporation

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

UME-8086 (04/90) elec.aps

Exhibit 1, Page 76

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

(The following needs to be completed only when this endorsement is issued subsequent to inception of the policy.)

| Named Insured | | |
|---|---|---|
| Endorsement Effective | Policy Number | Countersigned by |
| | | |

(Authorized Representative)

A. The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism" or an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory"..

B. The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "personal injury", "advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the Terrorism Risk Insurance Act, as amended. The criteria contained in the Terrorism Risk Insurance Act, as amended, for a "certified act of terrorism" include the following:

   a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act, as amended; and

   b. The act resulted in damage:

      (1) Within the United States (including its territories and possessions and Puerto Rico); or
      (2) Outside the United States in the case of:
         (a) An air carrier (as defined in Section 40102 of title 49, United States code) or United states flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States) regardless of where the loss occurs; or
         (2) The premises of any United States mission; and

   c. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act, as amended.

C. In the event of any incident of a "certified act of terrorism" or an "other act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

All other terms and conditions of this policy remain unchanged.

00-GL 3877 (12-07)          © 2007, Fireman's Fund Insurance Company, Novato, CA. All rights reserved.
                            Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Exhibit 1, Page 77

## IMPORTANT NOTICE REGARDING TERRORISM COVERAGE

| | | | |
|---|---|---|---|
| **Insured:** | Composite Technology Corp. (See UME-8086) | **Policy Number:** | SGL 1002344 |
| **Producer:** | Swett & Crawford | **Effective Date:** | 06/03/2010 |

This notice applies to all the type(s) of insurance provided under this policy that are subject to the Terrorism Risk Insurance Act, as amended ("The Act"). You are hereby notified that under The Act, you have a right to purchase insurance coverage for losses arising out of certified acts of terrorism, as defined in Section 102(1) of The Act: The term "certified act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT REGARDING THE INSURANCE COVERAGE YOU HAVE THE RIGHT TO PURCHASE FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW, HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURER'S LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEEDS $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

Our records indicate that you previously rejected coverage for losses arising out of certified acts of terrorism, as defined by The Act, when we provided you a quote for insurance. Accordingly, your policy does not currently provide this coverage. However, The Act requires that we again make an offer at this time. If you wish to change your decision and purchase certified acts of terrorism coverage, you must contact your agent or broker representing the Fireman's Fund Insurance Companies and request certified acts of terrorism coverage so we can provide you with a new quote. If you do not do so, it will be presumed that you have rejected this offer of certified acts of terrorism coverage.

Please note that any coverage mandated by applicable Standard Fire Policy laws or Workers Compensation laws in your state will not be affected by your rejection of terrorism coverage.

This offer of coverage for losses due to certified acts of terrorism, as defined by The Act, if

accepted, will be subject to the limit(s), terms and conditions of any policy or endorsement subsequently issued.

If you have any questions about this or any other insurance matter, please contact your agent or broker representing the Fireman's Fund Insurance Companies.

One of the Fireman's Fund Insurance Companies as named on the declaration page of your policy.

# REPORTING A CLAIM

Fireman's Fund is committed to providing insureds and clients with effective claim service.

In the event of an incident which may result in a claim, an actual claim, or your receipt of suit papers, please follow the procedures outlined below.

## SUGGESTIONS FOR REPORTING CLAIMS

NOTICE OF EACH INCIDENT, CLAIM OR SUIT SHOULD IMMEDIATELY BE REPORTED TO:

**Fireman's Fund**

**Phone Number: 1-888-347-3428**

**Please fill out the online claim reporting form which is available at www.ffic.com or contact your agent or broker for assistance.**

05-GE 0002 Ed. 09/09

# VALIDATION

The policy provisions included herein along with the Declarations Page and any endorsements issued complete this evidence of insurance.

IN WITNESS WHEREOF,

the Company indicated on the Declarations Page of the policy has caused the policy to be signed by its president and secretary, but this policy shall not be valid unless the Declarations are countersigned, when necessary, by a duly authorized representative of the Company.

_Secretary_                         _President_

One of the Fireman's Fund Insurance Companies®



**Fireman's Fund™**
Insurance Company

A company of **Allianz (ⅰ)**

---

THIS NOTICE OF VALIDATION IS ATTACHED TO AND FORMS PART OF
YOUR EVIDENCE OF INSURANCE

Issued by the **Interstate Fire & Casualty Company** named in the policy.
Executive Offices:  33 W. Monroe Street
Chicago, IL 60603

MSN-8007 Ed. 09/09

# EXHIBIT "2"



**ace usa**

# International
# Advantage

## Commercial Insurance Policy
## Endorsements

## INTRODUCTION

This(ese) are your commercial insurance policy endorsements. They modify your coverage, please read them carefully. They may also add coverages to your existing policy.

### You, Your, We, Us, and Our

Throughout the policy and applicable endorsements, the terms "you" and "your" mean the person, people, or organization shown as the Named Insured in the Declarations. "We," "us," and "our" mean the insurance company issuing this policy. Besides you, there may be other people "insured" under certain parts of the policy.

### Word in Quotation Marks

Words and phrases that appear in quotation marks have the special meaning given to them in the Section - DEFINITIONS of the coverage form in which they appear.

### Insured

The word "insured" means any person or organization qualifying as such under the WHO IS AN INSURED sections of the coverage form in which they appear.

By signing and delivering the endorsement(s) to you, we state that it is a valid contract when counter-signed by our authorized representative.

**ACE AMERICAN INSURANCE COMPANY**

GEORGE D. MULLIGAN, Secretary

JOHN J. LUPICA, President



**ace usa**

Named Insured: Composite Technology Corp.

Policy Number: PHFD37483503

Endorsement Number: 022                    Effective: June 3, 2010

Policy Year From: June 3, 2010             To: June 3, 2011

Company Name:   ACE American Insurance Company

| Premium: ☐ Included   ☒ $   4,060 | Due When Coverage Begins: |
|---|---|

### INTERNATIONAL ADVANTAGE
### COMMERCIAL INSURANCE RENEWAL DECLARATION

| LINE OF COVERAGE | LIMITS | | PREMIUM |
|---|---|---|---|
| COMMERCIAL GENERAL LIABILITY COVERAGE | $1,000,000 | each "occurrence" | |
| | NOT COVERED | products/completed operations aggregate | |
| | $1,000,000 | personal & advertising injury aggregate | |
| | $1,000,000 | premises damage limit (each "occurrence") | |
| | $10,000 | medical expense limit (any one person) | |
| CONTINGENT AUTOMOBILE LIABILITY COVERAGE | $1,000,000 | each "accident" | |
| HIRED AUTO PHYSICAL DAMAGE | $25,000 | each one "accident" | |
| | $25,000 | each one Policy Period | |
| EMPLOYEE BENEFITS LIABILITY ENDORSEMENT | $1,000,000 | each claim | |
| | $1,000,000 | annual aggregate | |
| EMPLOYERS RESPONSIBILITY | | | |
| I.   BENEFITS FOR VOLUNTARY COMPENSATION | | | |
| North Americans: | STATE OF HIRE | | |
| Third Country Nationals: | COUNTRY OF ORIGIN | | |
| Local Nationals: | COUNTRY OF ORIGIN | | |
| II.  EXECUTIVE ASSISTANCE SERVICES | $1,000,000 | policy limit for Medical Assistance Services | |
| EMPLOYERS LIABILITY | | | |
| BODILY INJURY BY ACCIDENT | $1,000,000 | each accident | |
| BODILY INJURY BY DISEASE including by "endemic disease" | $1,000,000 | each employee | |
| BODILY INJURY BY DISEASE including by "endemic disease" | $1,000,000 | policy limit | |
| AD&D | SEE ATTACHED | | |
| EMPLOYEE DISHONESTY | NOT COVERED | | |
| COMMERCIAL PROPERTY | NOT COVERED | | |
| CARGO | NOT COVERED | "personal property" in transit | |
| K&E | SEE ATTACHED | per cause of loss | |

| TOTAL PREMIUM | $4,060 |
|---|---|
| TOTAL MINIMUM EARNED PREMIUM: | $2,500 |

### PREMIUM AUDIT DOES NOT APPLY

All other terms and conditions remain unchanged
Not valid unless countersigned by a duly authorized representative

SWETT & CRAWFORD

Broker Fee $250.00 Fully Earned

17901 VON KARMAN AVE.
SUITE 400
IRVINE, CA 92614

IT8W31   01-2003          Page 1   of 1          DCF   04-15-2010



**ace usa**

NAMED INSURED: Composite Technology Corp.

POLICY NUMBER: PHFD37483503        DECLARATIONS EFFECTIVE: June 3, 2010

COMPANY NAME: ACE AMERICAN INSURANCE COMPANY

# ACCIDENTAL DEATH AND DISMEMBERMENT DECLARATIONS

Insurance applies only to those coverages for which a Principal Sum is shown.

Regardless of the number of accidents, occurrences, covered persons, or claims, the company shall not be liable for any amount in excess of the applicable aggregate limit of liability set out below. If, in the absence of this provision, the company would pay more than the amount of such aggregate limit for a particular coverage, then the benefits payable to each covered person with a valid claim for such coverage will be reduced proportionately, so that the total amount the company will pay for such coverage is no greater than the applicable aggregate limit.

Accidental Death and Dismemberment – Medical Coverage:

**COVERAGE A**

Principal Sum: $_____25,000 Spouse: $ NOT COVERED Child: $ NOT COVERED

**Coverage B**

Principal Sum: $ NOT COVERED Spouse: $ NOT COVERED Child: $ NOT COVERED

AGGREGATE LIMIT OF LIABILITY:     $ 1,500,000

**Accidental Death and Dismemberment and Medical Coverages including Occupational Injury:**

**Coverage A**

Principal Sum: $ NOT COVERED Spouse: $ NOT COVERED Child: $ NOT COVERED

**COVERAGE B**

Principal Sum: $ NOT COVERED Spouse: $ NOT COVERED Child: $ NOT COVERED

Aggregate Limit of Liability:     $

**Accidental Death and Dismemberment and Medical Coverage for Educational Services**

**Coverage A**

Principal Sum: $ NOT COVERED

**Coverage B**

Principal Sum: $ NOT COVERED

Aggregate Limit of Liability:     $

Exhibit 2, Page 85



**ace usa**

Named Insured:  Composite Technology Corp.

Policy Number:  PHFD37483503          Declarations Effective:06/03/2010

Company Name: ACE American Insurance Company

# KIDNAP AND EXTORTION DECLARATIONS

Insurance Applies only to those coverages for which a Limit of Insurance is shown.

| | Limits | Causes of Loss |
|---|---|---|
| $ 1,000,000 | Each Loss <u>No</u> Annual Aggregate | Extortion/Ransom Moneys Payment |
| $ 1,000,000 | Each Loss <u>No</u> Annual Aggregate | In transit Extortion/Ransom Moneys Loss |
| $ 1,000,000 | Each Loss <u>No</u> Annual Aggregate | Kidnap and Extortion Expenses |
| $ 1,000,000 | Each Loss <u>No</u> Annual Aggregate | Legal Costs |
| $ 1,000,000 | Each Loss <u>No</u> Annual Aggregate | Detention Expenses |
| $ 250,000 | Sublimit Each Life | Medical, Death or Dismemberment |
| $ 1,250,000 | Sublimit Each Incident | Medical Death or Dismemberment |
| Unlimited: | Each Loss <u>No</u> Annual Aggregate | Incident Response |

Covered Person(s):

1.  All Officers, Directors and Employees of the Named Insured.

Territory:

Worldwide unless modified by endorsement.

IT1289   07-2008                    Page 1  of 1                    DCF   04-15-2010



**ace usa**

Named Insured: Composite Technology Corp.

Policy Number: PHFD37483503

Endorsement Number: 023                    Effective:  June 3, 2010

Policy Year From: June 3, 2010                To:  June 3, 2011

Company Name:  ACE American Insurance Company

| Premium: [X] Included | [ ] $_____ | Due When Coverage Begins: |
| --- | --- | --- |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - LEAD

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM
### CONTINGENT AUTO LIABILITY COVERAGE FORM
### EMPLOYERS RESPONSIBILITY COVERAGE FORM

This insurance does not apply to, and we shall have no duty of any kind with respect to, any injury, damage, expense, cost, loss, liability or legal obligation arising out of or allegedly arising out of or in any way related to the toxic properties of lead or lead-containing products, materials or substances.

This exclusion applies to all forms of lead, including but not limited to solid, liquid, vapor and fumes.

This exclusion applies, but is not limited, to any injury, damage, expense, cost, loss, liability or legal obligation to test for, monitor, abate, remove, or take any other remedial action with respect to lead or lead-containing products, materials or substances.

The addition of this endorsement does not imply that other policy provisions, including but not limited to any pollution exclusion, do not also exclude coverage for lead-related injury, damage, expense, cost, loss, liability or legal obligation.

All other terms and conditions remain unchanged.

IT1141   01-2003              Page 1  of 1              DCF   04-15-2010



**ace usa**

Named Insured: Composite Technology Corp.

Policy Number: PHFD37483503

Endorsement Number: 024                              Effective: June 3, 2010

Policy Year From: June 3, 2010                       To: June 3, 2011

Company Name: ACE American Insurance Company

| Premium: [X] Included | [ ] $ _____ | Due When Coverage Begins: |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – PROFESSIONAL SERVICES (BROAD FORM)

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

It is agreed that:

1.  The following exclusion is added to SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, EXCLUSIONS

    This insurance does not apply to:

    - **Professional Services**

        "Bodily injury" or "property damage" arising out of the rendering of or failure to render any professional service, including, but not limited to, the following:

        (1)  Legal, accounting or advertising services;

        (2)  Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

        (3)  Supervisory, inspection or engineering services;

        (4)  Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

        (5)  Any health or therapeutic service treatment, advice or instruction;

        (6)  Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

        (7)  Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

        (8)  Body piercing services; and

        (9)  Services in the practice of pharmacy.

IT 1616    11-2008                   Page 1  of 2                   DCF    04-15-2010

2. The following exclusion is added to SECTION I - COVERAGES, COVERAGE B. PERSONAL AND AD-VERTISING INJURY LIABILITY. EXCLUSIONS

This insurance does not apply to:

- **Professional Services**

  "Personal and advertising injury" arising out of the rendering of or failure to render any professional service, including, but not limited to, the following:

  (1) Legal, accounting or advertising services;

  (2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

  (3) Supervisory, inspection or engineering services;

  (4) Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

  (5) Any health or therapeutic service treatment, advice or instruction;

  (6) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

  (7) Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

  (8) Body piercing services; and

  (9) Services in the practice of pharmacy.

All other terms and conditions of this policy remain unchanged.

**ace usa**

Named Insured: Composite Technology Corp.

Policy Number: PHFD37483503

Endorsement Number: 025             Effective: June 3, 2010

Policy Year From: June 3, 2010         To: June 3, 2011

Company Name:  ACE American Insurance Company

| | |
|---|---|
| Premium: [X] Included    [ ] $_____ | Due When Coverage Begins: |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PRODUCTS-COMPLETED OPERATIONS HAZARD EXCLUSION

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

It is agreed that:

1. The following exclusion is added to **SECTION I COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, EXCLUSIONS:**

   - This insurance does not apply to:

   **Products-Completed Operations Hazard**

   "Bodily injury" or "property damage":

   1. arising out of the "products-completed operations hazard", or

   2. for which liability for "bodily injury" or "property damage" included within the "products-completed operations hazard" is assumed under any contract or agreement.

2. The following exclusion is added to **SECTION I COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY, EXCLUSIONS:**

   - This insurance does not apply to:

   "Personal injury" or "advertising injury":

   1. arising out of the "products-completed operations hazard", or

   2. for which liability included within the "products-completed operations hazard" is assumed under any contract or agreement.

All other terms and conditions of this policy remain unchanged.

IT1620   05-2009           Page 1  of 1          DCF   04-15-2010

**ace usa**

Dear International Producer:

<u>PREMIUM COLLECTION POLICY</u>

It is expected that producers bill from ACE's bound quote letter for New Business and automatically for renewals.  PREMIUM IS DUE TO ACE 30 DAYS AFTER THE EFFECTIVE MONTH OF THE POLICY. <u>Example:</u> policies effective any day in the month of May are due June 30.

Any transaction late or back dated will be due immediately.

Manual bills may accompany your policy for late, unusual or when billing premium and taxes on foreign issued policies when the premium is being collected in the U.S. These manual bills supercede any statement entry.

A premium statement will be sent to your accounting department the first day of every month. Keeping ACE abreast of any address changes will prevent unnecessary cancellations.

ACE U.S.I. Advantage will send to the producer, 10 day notice of cancellation upon notification of non-payment by our accounting department.  Immediate payment will be necessary for reinstatement.

<u>WHERE TO PAY YOUR CLIENT'S PREMIUM THAT IS BILLED TO YOU</u>

**SEND CHECKS THROUGH REGULAR MAIL**

<u>PAYABLE TO:</u>

<u>ACE USA</u>
DEPT CH 10678
PALATINE, IL  60055-0678

**OVERNIGHT MAIL**

<u>PAYABLE TO:</u>

<u>ACE USA</u>
ACE American Insurance Company
5505 N. CUMBERLAND AVE
SUITE 307
CHICAGO, IL  60656-1471
ATTN: BOX #10678

OUR ACCOUNTING DEPARTMENT IS LOCATED IN WILMINGTON, DELAWARE.
FOR ANY QUESTIONS REGARDING YOUR PREMIUM STATEMENT PLEASE
CONTACT GREG MOLCHEN AT 302.476.6622 OR THROUGH OUR CUSTOMER
SERVICE DESK AT 1.800.204.0518.
FOR INFORMATION REGARDING WIRE TRANSFERS,
PLEASE CONTACT GREG DIRECTLY.



**ace usa**

### ACE Producer Compensation
### Practices & Policies

ACE believes that policyholders should have access to information about ACE's practices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at http://www.aceproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.



**ace usa**

# ACE INA Privacy Statement

The ACE INA group of companies strongly believes in maintaining the privacy of information we collect about individuals. We want you to understand how and why we use and disclose the collected information. The following provides details of our practices and procedures for protecting the security of non-public personal information that we have collected about individuals. This privacy statement applies to policies underwritten by the ACE INA group member companies listed below.

## INFORMATION WE COLLECT

The information we collect will vary depending on the type of product or service individuals seek or purchase, and may include:

- Information we receive from individuals, such as their name, address, age, phone number, social security number, assets, income, or beneficiaries;

- Information about individuals' transactions with us, with our affiliates, or with others, such as policy coverage, premium, payment history, motor vehicle records; and

- Information we receive from a consumer reporting agency, such as a credit history.

## INFORMATION WE DISCLOSE

We do not disclose any personal information to anyone except as is necessary in order to provide our products or services to a person, or otherwise as we are required or permitted by law.

We may disclose any of the information that we collect to companies that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements.

## THE RIGHT TO VERIFY THE ACCURACY OF INFORMATION WE COLLECT

Keeping information accurate and up to date is important to us. Individuals may see and correct their personal information that we collect except for information relating to a claim or a criminal or civil proceeding.

## CONFIDENTIALITY AND SECURITY

We restrict access to personal information to our employees, our affiliates' employees, or others who need to know that information to service the account or in the course of conducting our normal business operations. We maintain physical, electronic, and procedural safeguards to protect personal information.

## CONTACTING US

If you have any questions about this privacy statement or would like to learn more about how we protect privacy, please write to us at ACE INA Customer Services, P.O. Box 1000, 436 Walnut Street, WA04F, Philadelphia, PA 19106. Please include the policy number on any correspondence with us.

| | |
|---|---|
| ACE American Insurance Company | Century Indemnity Company |
| ACE Fire Underwriters Insurance Company | Illinois Union Insurance Company |
| ACE Indemnity Insurance Company | Indemnity Insurance Company of North America |
| ACE Insurance Company of the Midwest | Insurance Company of North America |
| ACE Property and Casualty Insurance Company | Pacific Employers Insurance Company |
| Atlantic Employers Insurance Company | Westchester Fire Insurance Company |
| Bankers Standard Fire and Marine Company | Westchester Surplus Lines Insurance Company |
| Bankers Standard Insurance Company | ESIS, Inc. |

IT1211   01-2009              Page 1   of 1              DCF   04-15-2010



**ace usa**

# HOW TO REPORT YOUR CASUALTY CLAIMS
# KEY CONTACT NUMBERS FOR EMERGENCY SERVICES

In the event of a claim, suit or loss under your Policy, contact your agent or broker. To report a claim, occurrence, accident, suit, loss or injury to us, in accordance with and as provided in the respective coverage parts of your Policy, please use any of the following methods, and please provide the information listed below, as well as any information your Policy requires:

**To e-mail send to:**
USI-FirstNoticeofLoss@acegroup.com
(This e-mail address is to be used for new claim reporting only.)

**To fax:**
1.866.635.5687

**To mail:**
ACE USA
Foreign Casualty Claims
P.O. Box 5116
Scranton, PA 18505-0546

The ACE USA — Foreign Casualty Claims Unit is located in Wilmington, Delaware. To contact the claims department by phone during normal business hours or to report a claim, call 1.866.809.0396.

Please be sure to include the following information, in addition to any specific information required by the applicable coverage part:

- Policy Holder Name
- Policy Number
- Type of loss
- Date of Event
- Description of loss
- Insured contact name and details (phone, e-mail, etc.)
- Third Party contact name and details (phone, e-mail, etc.)
- Any other pertinent information available

## KEY CONTACT NUMBERS FOR EMERGENCY SERVICES

### 24 Hour Emergency Response Executive Assistance® Services

Emergency Medical, Personal, Travel Assistance, Emergency Political Evacuation and Concierge Services. Calling the numbers below will provide the caller access to the Executive Assistance Services. Calling the following numbers <u>does not</u> constitute the report of a claim, occurrence, accident, suit, loss or injury, as provided for in the respective coverage parts of your Policy. To report a claim, occurrence, accident, suit, loss or injury to us, you must follow one of the methods set out above.

**Executive Assistance Toll Free Inside U.S. and Canada: 1(800)766-8206**

Executive Assistance Toll Free Outside U.S. and Canada IDD + 800-0200-8888 (available from 40 countries)

Executive Assistance Collect Calls Outside the U.S. and Canada: 1 (202) 659-7777

Where Toll Free or Collect Calls are not available
Executive Assistance Outside the U.S. and Canada: IDD 1 (202) 659-7777



**ace usa**

## Executive Assistance® Services
## Around the Clock Protection
### When Traveling
### Outside Your Home Country

*This document provides an explanation of Executive Assistance ® Services, as well as other proprietary information regarding how to access and use these Services. This information should be shared with covered employees, volunteers and students.*

### Overview of Services

Your International Advantage ® Package Policy includes ACE Executive Assistance ® Services, at no additional premium.

A benefit that complements the International Advantage ® Package Policy coverage plan, Executive Assistance® Services are designed to provide your covered employees, volunteers and students, who travel outside their home country on covered trips, with online pre-trip security and travel information and - while they are traveling - with 24 hour access to global providers of emergency medical, personal, legal and travel services, emergency medical and political evacuation or repatriation, and concierge services.

Through pre-eminent global service providers, ACE has created a unique and proprietary combination of online and live services designed to address emergencies faced by those who travel outside their home country on business, with non-profit organizations or as part of educational instit ution programs. Executive Assistance ® Services are a key component of the international risk management solutions ACE delivers to our customers.

Executive Assistance ® identification ("wallet") cards and passport stickers are available online to insureds and their covered employees, volunteers or students through www.aceExecutiveAssistance.com, as PDF documents that can be downloaded and printed at the convenience of ACE policy holders as frequently as needed.

*Use of this information services, including access to the password protected website provided as part of Executive Assistance ® Services, is intended solely for your authorized employees, volunteers or students. Misuse of this information, including the proprietary telephone numbers and User ID and Password shall be the responsibility of the Insured.*

### HOW TO ACCESS SERVICES

#### Worldwide Telephone Access⁺

Call Europ Assistance ® USA from anywhere in the world 24 hours a day/7 days a week for Medical and Political Evacuation Emergencies, for Emergency Travel, Legal and Personal Assistance Services, and for Concierge Services. Europ Assistance ® professionals will connect policyholders with iJET Intelligent Risk Systems for emergency political evacuations:

- Toll Free When Outside U.S. and Canada - IDD +800 0200-8888  (available from 40 countries)
  - check www.aceExecutiveAssistance.com for complete list of countries
- Collect When Outside the U.S. and Canada  - 1  +(202) 659-7777
- If Toll Free or Collect Calls Are Not Available When Outside the U.S. and Canada: IDD + 1 +(202) 659-7777
- Toll Free Within the U.S or Canada - 1 +(800) 766-8206

**Online Information and Services\***

Information about Executive Assistance® Services, as well as access to the Online Security Information,Other Information Services, Online Wallet Card PDF and Passport Stickers PDF is available through a proprietary password protected website. There are no restrictions to the number of times an insured may access this website

- www.aceExecutiveAssistance.com
- User ID: acepremier Password: 7kiit6

**For Medical Emergencies**

Please be prepared with the following information

1. Name of caller, phone/fax no., relationship to patient
2. Patient's name, age, sex
3. Description of patient's condition
4. Name, location and phone number of hospital
5. Name and phone number of treating doctor; where and when treating doctor can be reached
6. Health insurance, workers' compensation and auto insurance information (if involved in an auto accident)
7. Policy Plan No. 01 SP 585
8. Name of Insured

**For Political Evacuation Emergencies**

Please be prepared with the following information

1. Name of caller, phone/fax no., relationship to patient
2. Evacuee(s) name, age, sex
3. Description of political emergency and reason for evacuation
4. Name, location and phone number where evacuee(s) can be reached
5. Policy Plan No. 01 SP 585
6. Name of Insured

## HOW EXECUTIVE ASSISTANCE® WORKS

**Medical Assistance Services\***

All services and payments must be arranged and pre-approved by Europ Assistance. Evacuations and repatriations must be ordered by a legally licensed physician and approved by a Europ Assistance designated physician to certify that the severity of the injury or sickness warrants an emergency evacuation/repatriation. All transportation arrangements must be by the most direct and economical route possible. If you are seriously ill or injured and cannot call, you must contact Europ Assistance as soon as you are able.

- Hospital Admission Deposit

  Europ Assistance will either guarantee the payment of or wire any required emergency hospital admission deposit up to USD$10,000. It is the responsibility of the Policyholder or covered employee/volunteer/student to repay deposit to Service Provider within 45 days (without interest).

- Medical Monitoring

  Europ Assistance will monitor your condition when hospitalized abroad and will use best efforts to report your condition regularly to a person designated by you.

- Dispatch of a Doctor or Specialist

  When Europ Assistance determines, based on information available to them, that your condition cannot be adequately assessed to evaluate the need for evacuation, Europ Assistance will dispatch a doctor or specialist to your location. ACE will pay the cost of the doctor's or specialist's travel to your location, but does not pay the cost of any medical services rendered by the doctor or specialist at the location.

- Emergency Medical Evacuation and Repatriation

  If Europ Assistance determines adequate medical facilities are not available locally, Europ Assistance will arrange and ACE will pay for emergency medical evacuation under medical supervision, if necessary, to the nearest location with adequate facilities.

  If Europ Assistance determines that it is medically necessary to repatriate you to a facility in your country of residence or citizenship, following stabilization, Europ Assistance will arrange and ACE will pay for repatriation under medical supervision, if necessary.

  Europ Assistance will arrange and ACE will pay the cost of one family member or other traveling companion to continue to accompany you during your evacuation or repatriation, limited to the cost of the airfare, and an incidental expense maximum of USD $300 per day, and USD $5,000 maximum for any one occurrence.

Personal and Legal Assistance Services©

- **Pre-Trip Medical Referral Information** *to multi-lingual doctors and/or addresses/phone numbers of hospitals* Europ Assistance will provide pre-trip referral information to you regarding countries and regions to be visited, including local multi-lingual doctors and/or addresses and phone numbers for hospitals.

- **Emergency Medication** *arrangements and transportation* should you require prescription medication that is not available locally, Europ Assistance will make arrangements for the transportation of such medication, when possible and legally permissible, upon the request of the prescribing physician.

- **Embassy and Consular Information**

  Europ Assistance will provide you or your traveling companions with contact information for embassies and consulates worldwide.

- **Lost Document Assistance**

  Europ Assistance will assist with obtaining replacements if you lose important travel documents while traveling, including passport and credit cards. ACE does not pay the cost of obtaining such replacements.

- **Emergency Cash Advance**

  Europ Assistance will, whenever possible, provide you with a cash advance of up to USD$1,000 in local currency for emergencies.

- **Legal Access**

  Europ Assistance will provide you with an introduction to local attorneys. Assistance also will be provided, but not the cost of, to obtain bail bonds in those areas where such bonds are customarily issued.

- **Translations & Interpreters**

  Europ Assistance will provide personal emergency translation services, as well as referrals to interpreter services. When personal presence or other customized interpreter services are required, you are responsible to pay locally the cost of such interpreter services.

Travel Assistance Services*

When Europ Assistance hospitalizes or evacuates you and a traveling companion's air ticket is no longer usable, Europ Assistance will arrange for, but not pay the cost of, one way air transportation for the companion to the original departure point, or to their residence.

## Online Security Information*

Online worldwide security information services will be provided through Europ Assistance USA and iJET Intelligent Risks Systems. Powered by iJET, the online Executive Assistance© security information will include rich and dynamic security content for more than 180 countries and more than 200 cities worldwide. ACE Policyholders with Executive Assistance© Services can select Information at a region, country or city level. Detailed reports will include an overall security rating across six key categories, security alerts, the latest security, health and exit/entry information, key local contact numbers and a map. To access online security information, go to www.aceExecutiveAssistance.com  **User ID:acepremier Password: 7kilt6**